(No. 59280.—

DENNIS D. MURDY, Appellee, v. JIM EDGAR, Secretary of State, Appellant.

*Opinion filed October 3, 1984.*

Neil F. Hartigan, Attorney General, of Springfield (Frederic D. Tannenbaum, Assistant Attorney General, of Chicago, of counsel), for appellant.

Joseph C. Minneman, of Peoria, for appellee.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Dennis Murdy, filed an action in the circuit court of Sangamon County for administrative review of the decision of defendant, Jim Edgar, Secretary of State for Illinois (Secretary), denying his petition for reinstatement of driving privileges. The circuit court reversed the decision of the Secretary, and the appellate court affirmed (117 Ill. App. 3d 1091). We granted the Secretary's petition for leave to appeal (87 Ill. 2d R. 315).

There is but one issue: Was the Secretary's decision against the manifest weight of the evidence?

The record shows that on January 18, 1982, an administrative hearing was held regarding the November 1979 revocation of plaintiff's driving privileges. Following that hearing, the Secretary entered an order denying relief. Thereafter, plaintiff filed with the Secretary a motion for reconsideration and for a rehearing. He requested restoration of his driving privileges or, in the alternative, a restricted driving permit. The Secretary

granted a formal rehearing, which was held on May 13, 1982.

At the rehearing, the Secretary introduced plaintiff's driving record, as evinced by an abstract. The abstract revealed that on April 27, 1973, plaintiff was convicted of driving while under the influence of liquor and for driving without a valid driver's license. For these convictions, his driving privileges were revoked from June 14, 1973, through September 27, 1974. It further indicated that on April 15, 1977, he was convicted of driving 16-24 miles per hour over the speed limit. The record shows that his last conviction occurred on November 1, 1979, for driving while under the influence of alcohol and causing property damage. His driving privileges were revoked pursuant to section 6—206(a)(1) of the Illinois Vehicle Code. (Ill. Rev. Stat. 1979, ch. 95½, par. 6—206(a)(1).) However, he was later issued a restricted driving permit during the period from July 27 through October 27, 1981.

Plaintiff testified that he was 30 years old, married with two children, and was employed as a "shipman" at the Caterpillar Tractor Company. He indicated that he needs his car for transportation to work (approximately 16 miles round trip) and also to side jobs he does as a carpenter. Plaintiff began driving when he was 16 or 17 years old, although he did not participate in a high school driver's education course. He further testified that at about age 16 he began drinking with his high school friends on weekends; that he was 21 years old when he was first convicted of driving while intoxicated and characterized himself at that time as "young and foolish." Plaintiff stated that his drinking increased after the first conviction, which he attributed to personal and financial pressures. He indicated that he did not believe at that time that he had a drinking problem.

Plaintiff related that, since the November 1979 con-

viction, he has recognized and controlled his drinking problem. He stated that he has not been intoxicated since mid-1980; that the last time he had a drink was a glass of wine on Christmas eve in 1981; and that at neither time was he driving an automobile. In addition, he enrolled in and successfully completed an alcohol-counseling program at the Tazwood Center for Human Services.

Numerous letters from friends, co-workers, plaintiff's pastor, and alcohol counselors were then introduced into evidence. These letters attested to plaintiff's good character and recommended that plaintiff's driving privileges be restored. One letter, from Todd Garrison, a counselor at the Tazwood Center, revealed that plaintiff successfully completed "DUI school" in April of 1982; that he does not currently have an alcohol problem; and that further counseling was not recommended. The letter also indicated that plaintiff "scored 15 points on the MAST [Michigan Alcoholic Screening Test]." The counselor's letter further related:

"From what Dennis has told me, I feel very positive about the changes he has made in his drinking. It seems that since the accident Dennis has taken responsibility for his behavior. The return of his license, I feel, would be a positive move."

A letter from Linda Berberich, another alcohol counselor at Tazwood, was also admitted into evidence. That letter read:

"Mr. Murdy's past experience with alcohol has definite signs that it *was* a problem, with, often times, an inability to control his drinking. Mr. Murdy, however, has remained sober for the past six to seven months. He seems to have gained a great deal of awareness in regard to his drinking behavior and has much support from his family in his sobriety. I feel confident that Mr. Murdy will make a continuous effort to remain sober, which would make him a safe risk on the highway." (Emphasis added.)

Kathleen Murdy, plaintiff's wife, was then called to

testify. She indicated that in 1973 her husband's drinking was similar to a "partying teenager," but that he now has completely abstained from liquor. She further related that pressures, similar to those faced by plaintiff in 1979, are still present; however, he is "really handling it much better." Mrs. Murdy asked that the Secretary reinstate her husband's driver's license so as to relieve the hardship caused by its revocation.

After Mrs. Murdy testified, the administrative hearing was adjourned. We note that the Secretary, except for the driving abstract, offered no rebuttal either by way of contrary evidence or through cross-examination of plaintiff or his wife. The conclusions of plaintiff's alcohol counselors and the testimony of plaintiff, which was corroborated by his wife, were therefore undisputed.

On June 10, 1982, by written order, the Secretary denied plaintiff's petition for reinstatement of driving privileges. The Secretary concluded that, in light of plaintiff's drinking problem, he "was not satisfied after investigation of the petitioner that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety." The order, however, did not disclose what, if any, facts were discovered by the Secretary from his "investigation of the petitioner."

On July 14, 1982, plaintiff filed a complaint for administrative review in the circuit court. The court found that the Secretary's order contained insufficient findings of fact and accordingly reversed and remanded the case with directions for the Secretary to make sufficient findings. See Ill. Rev. Stat. 1981, ch. 110, par. 275.

On December 2, 1982, the Secretary entered an amended order which summarized plaintiff's drinking history and stated that he has "failed to recognize and deal with his drinking problem." The Secretary further found that plaintiff's testimony, regarding the last time he was intoxicated, was not credible. On December 15,

1982, plaintiff filed an amended complaint in the circuit court for administrative review. On the basis of the amended order, the court reversed the Secretary's decision as against the manifest weight of the evidence. It ordered that the cause be remanded and that the Secretary either issue plaintiff a driver's license or a restricted driving permit. The appellate court affirmed, reasoning that "the Secretary's conclusion that plaintiff would endanger the public safety and welfare is unsupported by substantial evidence in the record." 117 Ill. App. 3d 1091, 1097.

The Administrative Review Act provides that the findings and conclusions of an administrative agency on questions of fact are considered to be *prima facie* true and correct. (Ill. Rev. Stat. 1981, ch. 110, par. 274.) This statute has been construed to mean that courts may not interfere with the discretionary authority vested in administrative bodies unless that authority is exercised in an arbitrary or capricious manner (*Dorfman v. Gerber* (1963), 29 Ill. 2d 191, 196) or the administrative decision is against the manifest weight of the evidence (*Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 76; *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229). Thus, a reviewing court is not to reweigh the evidence or make an independent determination of the facts. Rather, its sole function is to ascertain whether the findings of the administrative agency are contrary to the manifest weight of the evidence.

The Illinois Vehicle Code (Code) grants the authority to the Secretary to reinstate driving privileges or to issue restricted driving permits. (See Ill. Rev. Stat. 1981, ch. 95½, pars. 6—206, 6—208.) A review of the Code makes it clear that, once driving privileges are revoked, the restoration of such privileges is not automatic. (*Peo-

*ple v. Turner* (1976), 64 Ill. 2d 183, 186.) For example, before driving privileges are restored under section 6—208, the Secretary must determine that "to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare." (Ill. Rev. Stat. 1981, ch. 95½, par. 6—208(b)(2).) Similarly, the relevant inquiry before issuing a restricted driving permit is the danger to the public safety and welfare. (Ill. Rev. Stat. 1981, par. 6—206(c)(3).) (See also *Foege v. Edgar* (1982), 110 Ill. App. 3d 190, 193.) The statute under which plaintiff's driving privileges were revoked, section 6—206, provides both for the rescission of the Secretary's order of revocation and for the issuance of a restricted driving permit.

The Secretary submits that, in order to deny restoration of driving privileges, he need only present plaintiff's driving abstract showing two convictions for driving while under the influence of liquor. In support of this proposition, the Secretary cites the "Secretary's Procedures and Standards," which permit the refusal of reinstating driving privileges, for at least five years, to an applicant twice convicted for driving while under the influence of alcohol. (See 92 Ill. Admin. Code sec. 1001.440(g) (1983).) The Secretary claims that this regulation was in effect at the time of the administrative hearing and that the hearing officer based his decision on this standard.

We note that the administrative standard to which the Secretary cites, a copy of which was appended to his petition for leave to appeal, was not in effect at the time of the administrative hearing. A guideline similar to that cited was issued by the Secretary as an internal policy statement on December 21, 1981, and became effective on January 1, 1982. (See Secretary's Procedures and Standards, sec. III(B)(1) (1981) (eff. Jan. 1, 1982).) The policy statement was then amended by the Secretary

and became effective, as an internal rule, on December 1, 1982. (See Secretary's Procedures and Standards, sec. V(2) (1982) (eff. Dec. 1, 1982).) The guideline cited by the Secretary, however, was not formally codified until April 27, 1983, and did not become effective until June 17, 1983. (See 7 Ill. Reg. 7501, 7504, 7527 (1983).) (92 Ill. Admin. Code, ch. II, sec. 1001.440(g) (1983).) We note that the rule was again amended on March 21, 1984, and became effective April 1, 1984. (92 Ill. Admin. Code, ch. II, sec. 1001.440 (1984).) Furthermore, there is no evidence to indicate that the hearing officer relied upon this guideline in reaching his decision. In addition, argument concerning the administrative standard was not advanced at the administrative hearing; and neither the June 10, 1982, order nor the amended order refer to the standard. Rather, the first time it was discussed was in the Secretary's reply brief in the appellate court. As such, plaintiff did not have an opportunity to address either the validity of the standard or the authority of the Secretary to promulgate such a rule. Reliance upon this rule is therefore waived. See 87 Ill. 2d R. 341; *People v. 123 Punch Boards* (1956), 8 Ill. 2d 520, 521 (argument not raised in initial brief is deemed waived for purposes of review).

The Secretary also relies upon section 6—103(4) of the Code to support his refusal to reinstate plaintiff's driving privileges. That section prohibits the Secretary from "issu[ing] or renew[ing] any license *** [t]o any person, as a driver, who is a habitual drunkard *** to a degree which renders him incapable of safely driving a motor vehicle." (Ill. Rev. Stat. 1981, ch. 95½, par. 6—103(4).) The Secretary asserts that his determination that plaintiff is a chronic alcoholic and therefore poses a threat to the public safety and welfare is supported by sufficient evidence. He claims that plaintiff refuses "to come to grips with and recognize that a pattern of alco-

hol abuse exists" and that plaintiff "presented no evidence that he has conquered the drinking problem." To support his finding that plaintiff is a chronic alcoholic, the Secretary states that "a letter from an alcohol counselor [referring to Ms. Berberich's letter] revealed that plaintiff does have definite signs of a problem ***." Additionally, the Secretary points to Mr. Garrison's letter and urges this court to take judicial notice that "plaintiff's MAST test score was 15, when common knowledge recalls five as borderline."

With respect to the plaintiff's MAST score, we believe that this is not an appropriate subject for judicial notice. Courts may take judicial notice of matters which are commonly known (*People v. Tassone* (1968), 41 Ill. 2d 7, 12) or of facts which, while not generally known, are readily verifiable from sources of indisputable accuracy (*People v. Davis* (1976), 65 Ill. 2d 157, 165). We agree with the appellate court that the MAST, in general, and the significance of plaintiff's score of 15, are not of such a nature as to meet the requirements for judicial notice, and that if the Secretary wished to rely upon the MAST test and the score plaintiff received, explanation of its relevance should have been introduced by way of expert testimony. 117 Ill. App. 3d 1091, 1096.

We conclude that the Secretary's determination that plaintiff is a chronic alcoholic is not supported by the evidence. To the contrary, the evidence showed that he recognized the drinking problem and has controlled it. It was uncontroverted that he enrolled in and successfully completed an alcohol-counseling program and that he has not been intoxicated since mid-1980. Further, the letter from Ms. Berberich stated that plaintiff's *past* experience with alcohol *was* a problem, but that he had totally abstained from liquor for six to seven months prior to the hearing. Clearly, this does not indicate, as the Secretary claims, that plaintiff currently has a drinking problem.

Our review of the record persuades us that the Secretary's decision was against the manifest weight of the evidence. Accordingly, we affirm the judgment of the appellate court.

*Judgment affirmed.*