ROBERT LAMBORN, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

First District (2nd Division)   No. 88—0603

Opinion filed January 17, 1989, *nunc pro tunc* December 6, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellant.

Holland C. Capper, of Holland C. Capper, Ltd., of Chicago, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

The Illinois Secretary of State appeals from an order of the circuit court of Cook County reversing an administrative decision denying reinstatement of plaintiff's driving privileges.

Plaintiff, Robert Lamborn, was first arrested for driving while under the influence of intoxicating liquor (DUI) on October 5, 1982. Plaintiff refused to submit to a breathalyzer test, and his driving privileges were suspended for six months. (Ill. Rev. Stat. 1981, ch. 95½, par. 6—206(a)(17).) On April 21, 1983, plaintiff was convicted of failure to drive on the proper side of the roadway (Ill. Rev. Stat. 1983, ch. 95½, par. 11—701(a)), and he was placed under court supervision and referred to a remedial/rehabilitation program. Plaintiff was again arrested for DUI on October 28, 1983, after having consumed six or more beers and peppermint schnapps. Plaintiff took and failed a breathalyzer test but did not recall being told the results. Upon conviction of this DUI charge, plaintiff's driving privileges were revoked on October 6, 1984. (Ill. Rev. Stat. 1983, ch. 95½, par. 6—205(a)(2).) On September 5, 1985, plaintiff was convicted of driving while his license had been revoked. Ill. Rev. Stat. 1985, ch. 95½, par. 6—303(a).

Plaintiff initially underwent an alcohol- and drug-dependency evaluation on September 5, 1984, which revealed that plaintiff was consuming one pint to one quart of schnapps or brandy and some beer almost daily. Plaintiff's Michigan Alcoholism Screening Test (MAST) score was high enough to indicate alcoholism, and he had experienced memory loss, problems with his wife, and a fight with an acquaintance while drinking. Plaintiff previously had attended Alcoholics

Anonymous (AA) and had undergone treatment for alcoholism. Based upon this information, plaintiff was classified at Level III, indicating alcoholism/chemical dependency. The countermeasures recommended for plaintiff included (1) court supervision or probation with the condition of total abstinence from alcohol and (2) regular attendance at AA meetings and verification of his attendance.

During an alcohol- and drug-dependency reevaluation conducted on August 11, 1986, plaintiff stated that he had not used alcohol or any drugs since March 26, 1984. Plaintiff also denied that he was an alcoholic and indicated that he did not plan to resume drinking alcohol once his legal difficulties were resolved. The chemical-dependency assessor found that plaintiff did not accept his alcoholism and classified him at Level III. The assessor did not recommend any countermeasures beyond those described in the 1984 evaluation.

A final alcohol- and drug-dependency evaluation was conducted on February 9, 1987. The evaluation report indicated that there was no change in plaintiff's attitude or in the criteria for admission into a treatment program. The report also stated that any return of plaintiff's driving privileges depended upon his completion of some additional treatment program or, at a minimum, regular attendance at AA meetings, procurement of a sponsor, and work at and acceptance of a program of recovery. It was recommended that plaintiff choose an intensive out-patient treatment program and complete all phases of "after-care," or that he resume active participation in AA. Plaintiff was again classified as Level III, indicating an alcohol/chemical dependency. The suggested countermeasures consisted of (1) completion of an intensive out-patient treatment program and all recommended "after-care," or (2) resumption of regular attendance of at least one AA meeting weekly, plus the procurement of a sponsor and work at a realistic program of recovery. The evaluation report included the statement that "the rationale for these recommendations is the understanding of this office re: S[ecretary] O[f] S[tate] standards."

Plaintiff thereafter brought a petition seeking reinstatement of his full driving privileges or, in the alternative, a restricted driving permit (RDP). An administrative hearing was held upon plaintiff's petition. At the hearing, plaintiff testified that he had not used alcohol since March 1984. Plaintiff admitted that he was an alcoholic but stated that he did not attend AA because he did not have time. He indicated that his friends and his work provided an effective support system for him. Plaintiff testified further that he had attended an in-patient program for the treatment of alcoholism at Grant Hospital in 1979. Following this treatment, plaintiff maintained abstinence for

one year before he resume drinking alcohol. It was during this period of relapse that plaintiff was arrested for two DUI offenses.

Plaintiff was 51 years old at the time of the hearing and was employed as a conductor for Amtrak. He lived 10 miles from his job but was able to travel to and from work by public transportation and taxi cabs.

The hearing officer found that plaintiff was an alcoholic and that he did not understand the seriousness of his alcoholism. She also found that plaintiff had no recovery program to support his abstinence. She observed that his demeanor was defensive and somewhat resistant. She indicated that his testimony admitting that he was an alcoholic was not credible in light of his prior denials of alcoholism. Based upon the foregoing, the hearing officer concluded that (1) plaintiff was an alcoholic who must provide evidence of a support system to help maintain abstinence; (2) plaintiff did not demonstrate undue hardship because he was able to use public or private transportation to and from work, and he was not required to drive on the job; and (3) plaintiff failed to carry his burden of proving that he would be a safe and responsible driver and that he would not endanger the public safety and welfare. Consequently, the hearing officer recommended that plaintiff's petition be denied. In accordance with the recommendations of the hearing officer, defendant subsequently issued a decision denying plaintiff's petition.

Plaintiff thereafter filed a complaint seeking administrative review of defendant's decision. (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*) The circuit court reversed the defendant's decision, holding that it was against the manifest weight of the evidence. On appeal, defendant contends that the circuit court erred.

■ On administrative review a court is not to reweigh the evidence or make an independent determination of the facts. Rather, its sole function is to ascertain whether the findings of the administrative agency are contrary to the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) In order for the circuit court to find defendant's decision to be against the manifest weight of the evidence, the court must determine, after reviewing the evidence in the light most favorable to defendant, that no rational trier of fact could have agreed with the defendant's decision. *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 492 N.E.2d 929.

■ After an individual's license has been revoked, defendant has considerable discretion in issuing that person another license. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—208(b).) Defendant has promulgated regulations to assist him in this task. These regulations have the force

and effect of law. *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 1095, 492 N.E.2d 929.

The regulations specifically address the requirements for reinstatement of driving privileges after one has had a license revoked due to offenses involving the use of alcohol. These regulations provide in pertinent part:

"(a) In all applications for reinstatement or RDPs Applicants must submit an alcohol or drug evaluation and evidence of successful completion of an alcohol- or drug-related driver remedial course and/or evidence of successful completion of treatment or proof of adequate rehabilitative progress. ***

(b) Before any driving relief will be granted, the Applicant must prove by clear and convincing evidence: that he/she does not have a current problem with alcohol or other drugs; that he/she is a low or minimal risk to repeat his/her past abusive behaviors and the operation of a motor vehicle while under the influence of alcohol or other drugs; and that he/she has complied with all other standards as specified in this Subpart D. If the evidence establishes that the Applicant has had an alcohol/drug problem the Applicant must also prove that said problem has been resolved.

* * *

(3) Applicants classified as alcoholic/chemically dependent (Level III) must document compliance with all recommendations of his/her evaluator and must prove that he/she has established an ongoing support/recovery program." 92 Ill. Adm. Code 1001.440 (1984 & Supp. 1987).

The administrative record clearly reveals that plaintiff was classified as alcoholic/chemically dependent (Level III) and that he failed to comply with the above regulations. Plaintiff admitted that he had not entered an intensive out-patient treatment program and that he was not actively participating in AA or any other support or recovery program. Thus, it was undisputed that plaintiff had not complied with the recommendations of his evaluator. Moreover, the regulation requires that Level III applicants submit proof of involvement in an established ongoing support/recovery program. In the instant case, the defendant found and the circuit court acknowledged that plaintiff was not involved in an established ongoing support/recovery program. Plaintiff asserts that his driving privileges should be restored because he had abstained from alcohol for over one year without such a program. This argument does not, however, negate the requirements of the defendant's regulations. In each of three alcohol- and drug-depen-

dency evaluations, plaintiff was classified at Level III, indicating alcoholism/chemical dependency. Although he has admitted that he is an alcoholic, plaintiff has refused to participate in any form of support/recovery program. We must agree with defendant that such conduct is contrary to the requirements of defendant's regulations governing restoration of driving privileges.

The determination to be made by defendant was whether restoration of plaintiff's driving privileges would have endangered the public safety or welfare. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 393, 469 N.E.2d 1085.) In order to obtain reinstatement of his driving privileges, an applicant must show that deprivation of those privileges causes undue hardship regarding employment, that no other transportation is available, and that reinstatement of his privileges will not endanger the public safety or welfare. (*Markowski v. Edgar* (1986), 151 Ill. App. 3d 176, 502 N.E.2d 1304; *Sutton v. Edgar* (1986), 147 Ill. App. 3d 723, 498 N.E.2d 295.) Defendant considered the evidence presented and found that plaintiff had not adequately demonstrated that his driving privileges should be reinstated. Based upon the record before us we cannot say that defendant's decision was against the manifest weight of the evidence.

The judgment of the circuit court is reversed.

Judgment reversed.

HARTMAN and BILANDIC, JJ., concur.