THOMAS L. REYNOLDS, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

Fourth District   No. 4—89—0299

Opinion filed August 31, 1989.

GREEN, J., specially concurring.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for appellant.

Jeffrey S. Geisler, of Geisler Law Offices, of Decatur, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:
The defendant Secretary of State (Secretary) appeals from an order of the circuit court of Sangamon County which, upon administrative review, reversed an order of the Secretary denying plaintiff reinstatement of his driver's license or, in the alternative, a restricted driving permit.

We reverse.

Plaintiff was convicted of 10 traffic offenses from July of 1977 to April of 1981. His driver's license was twice suspended, the first time for two months and the second time for one year. Both suspensions

were as a result of his multiple speeding convictions. In April of 1981, plaintiff was convicted of driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug (DUI). Plaintiff was also convicted that same month of illegal transportation of alcohol. As a result of the DUI conviction, his license was revoked in May of 1981. (Ill. Rev. Stat. 1981, ch. 95½, pars. 6—206(a), 11—501.) In April of 1987, plaintiff was convicted of driving while his license was revoked (DWR).

In July of 1988, plaintiff petitioned the Secretary for reinstatement of his driver's license or, in the alternative, a restricted driving permit to commute to work. After a hearing in August of 1988, the Secretary adopted the findings, conclusions, and recommendations of the hearing officer and denied all relief requested by the plaintiff.

Plaintiff sought administrative review before the circuit court, arguing that the Secretary's denial was arbitrary and capricious, contrary to the manifest weight of the evidence, and constituted an abuse of discretion. The circuit court agreed and directed the Secretary to take all necessary steps to enable plaintiff to have his driving privileges restored.

Recently, this court dealt with a similar case that also involved the Secretary. In *Craig v. Edgar* (1988), 165 Ill. App. 3d 270, 272, 519 N.E.2d 112, 114, we stated the following:

> "The findings and conclusions of an administrative agency on questions of fact are considered *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) A court may not interfere with the discretionary authority vested in an administrative body unless that authority is exercised in an arbitrary manner or the decision is against the manifest weight of the evidence. A reviewing court may not reweigh the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) The Secretary's decision is contrary to the manifest weight of the evidence when no rational trier of fact, viewing the evidence in a light most favorable to the Secretary, could agree with the Secretary's decision. (*Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 1094, 492 N.E.2d 929, 933-34.)"

In his written findings and recommendations, the hearing officer set forth three separate "conclusions of law" which served as the bases for denying plaintiff's petition for reinstatement of his driving privileges. In his first two "conclusions of law," the hearing officer essentially found that the evidence presented at the hearing established that the plaintiff was an "alcoholic/chemically dependent person" who had failed to show that he had established an adequate sup-

port system in order to ensure continuous recovery from his "alcoholism/chemical dependency." Almost all of the evidence produced at the hearing dealt with the plaintiff's previous status as a drug and alcohol abuser who had successfully overcome his problem of abuse.

At the hearing, plaintiff testified that he had not had a drink since 1984, that he was regularly employed, and that he had ongoing support for his continued abstinence through involvement with his work, family, and hobbies. The hearing officer found the plaintiff to be sincere and credible and observed that his support system appeared to be working.

■■ Understandably, plaintiff attacks these findings on administrative review. Plaintiff argues that the first two "conclusions of law" are in conflict with the hearing officer's findings of fact and therefore contrary to the manifest weight of the evidence. However, we need not resolve this issue because the third "conclusion of law" upon which the hearing officer's recommendation was based is clearly not against the manifest weight of the evidence. The third "conclusion of law" held that the plaintiff "failed to carry his burden of proving that he would be a safe and responsible driver and that he would not endanger the public safety and welfare."

The Illinois Supreme Court in *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391-92, 469 N.E.2d 1085, 1088-89, reviewed the law applicable to the question of whether a petitioner seeking reinstatement of his driving privileges "would not endanger the public safety and welfare," and stated the following:

> "The Illinois Vehicle Code (Code) grants the authority to the Secretary to reinstate driving privileges or to issue restricted driving permits. (See Ill. Rev. Stat. 1981, ch. 95½, pars. 6—206, 6—208.) A review of the Code makes it clear that, once driving privileges are revoked, the restoration of such privileges is not automatic. (*People v. Turner* (1976), 64 Ill. 2d 183, 186.) For example, before driving privileges are restored under section 6—208, the Secretary must determine that 'to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare.' (Ill. Rev. Stat. 1981, ch. 95½, par. 6—208(b)(2).) Similarly, the relevant inquiry before issuing a restricted driving permit is the danger to the public safety and welfare. (Ill. Rev. Stat. 1981, par. 6—206(c)(3).) (See also *Foege v. Edgar* (1982), 110 Ill. App. 3d 190, 193.)"

In addition to the statutes cited by the supreme court, the Secretary has set forth administrative regulations which address the same question. Section 1001.420(d) of the Secretary's rules (92 Ill. Adm.

Code §1001.420(d) (Supp. Jan. 1, 1988)) provides that the Secretary, when deciding whether to issue restricted driving permits, shall consider (among other factors) the frequency, type, and severity of traffic violations, as well as efforts at rehabilitation or reform of past driving practices. Section 1001.420(e) (92 Ill. Adm. Code §1001.420(e) (Supp. Jan. 1, 1988)) provides that the effect of the issuance of a restricted driving permit (RDP) upon public safety will be carefully considered before any RDP is granted. Section 1001.430 (92 Ill. Adm. Code §1001.430 (Supp. Jan. 1, 1988)) directs that when the Secretary is considering the reinstatement of driving privileges after revocation, he shall consider (among other factors) whether the applicant has driven while his license was suspended or revoked, the applicant's total driving record (including, but not limited to, any reasons for driving violations), and whether the evidence shows that public welfare and safety will not be endangered by reinstatement of the applicant's driving privileges. Evidence before the Secretary in this case established that almost six years after plaintiff's license was revoked due to his DUI conviction and three years after he claims to have put into place a support system to help him avoid the misconduct of his youth, plaintiff was convicted of DWR (Ill. Rev. Stat. 1987, ch. 95½, par. 6—303), a Class A misdemeanor.

When the underlying revocation stems from a DUI conviction, DWR is treated by the legislature as one of the most serious driving offenses one can commit in the absence of bodily injury. A comparison of the sentencing provisions for DWR stemming from a DUI with those of DUI itself is illustrative of this point. A person convicted of DUI commits a Class A misdemeanor. A DUI conviction is elevated to a Class 4 felony if the driver is convicted a *third* or subsequent time. (See Ill. Rev. Stat. 1987, ch. 95½, par. 11—502(d).) A person convicted of DUI a *second* time within five years of a previous conviction must be sentenced to a minimum of 48 consecutive hours of imprisonment or assigned to a minimum of 10 days of community service as may be determined by the court. See Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(c).

The penalties for DWR are more severe. DWR, which is normally a Class A misdemeanor, is elevated to a Class 4 felony upon a *second* or subsequent violation when, as here, the underlying revocation stems from a conviction for DUI, reckless homicide, or leaving the scene of a motor vehicle accident involving personal injuries or death. (See Ill. Rev. Stat. 1987, ch. 95½, par. 6—303(d).) Furthermore, a person convicted of DWR stemming from these same underlying bases must serve upon the *first* conviction a minimum term of imprison-

ment of 7 consecutive days or 30 days of community service work. See Ill. Rev. Stat. 1987, ch. 95½, par. 6—303(c).

■ At the hearing, the sole explanation offered by the plaintiff with regard to his DWR conviction was the following: "Well uh, when I got, I got arrested it was in December of 86 and I was driving a, driving to the store to get some groceries because I couldn't get a hold of anybody to come and give me a ride and ***."

Based upon this record, the hearing officer's third "conclusion of law" was that plaintiff had failed to carry his burden of proving that he would be a safe and responsible driver and that he would not endanger the public safety and welfare. In the plaintiff's complaint for administrative review, the only reference he makes to the third "conclusion of law" is the following: "This conclusion is clearly contrary to the plaintiff's testimony, as well as his witness, and the letters submitted and received into evidence." However, other than the statements of the plaintiff quoted above, neither plaintiff's testimony, the testimony of his witness, nor any of the letters submitted into evidence make any reference to or explanation of the 1987 DWR conviction.

In the circuit court's order on appeal before us, the court's only statement with regard to the third "conclusion of law" is that it "is contrary to the manifest weight of the evidence." No explanation is given as to why this is so.

Despite the seriousness of the plaintiff's DWR conviction in 1987, plaintiff's brief makes no mention whatsoever of the DWR conviction in its attack on the Secretary's findings. Simply stated, the question before this court is whether any rational trier of fact, viewing the evidence in a light most favorable to the Secretary, could agree with the Secretary's decision that the plaintiff failed to carry his burden of proving that he would be a safe and responsible driver and that he would not endanger the public safety and welfare. On these facts, the answer is clearly in the affirmative, and the circuit court erred in holding otherwise.

■ As a last matter, this court needs to resolve whether we should reverse the circuit court's order outright or reverse and remand for further administrative hearings. Those hearings would provide the Secretary with the opportunity to determine whether the third "conclusion of law" is sufficient standing alone to warrant the denial of plaintiff's driving privileges. This issue arises because of plaintiff's argument that the Secretary's first and second "conclusions of law" were inconsistent with the Secretary's findings of fact. On this record, however, we do not believe remand is necessary. The third "conclusion of law" is entirely separate and severable from the

first and second "conclusions of law." Furthermore, although the Secretary found that plaintiff had failed to carry his burden of proving that he would be a safe and responsible driver and that he would not endanger the public safety and welfare, the Secretary already accepted the plaintiff's claims that he had overcome his alcohol and chemical dependency. In light of plaintiff's DWR conviction in 1987, we find no inconsistency in the Secretary's conclusions that plaintiff had overcome his drug and alcohol abuse and yet remained a potential danger to public safety and welfare if he were to have any of his driving privileges restored. Accordingly, there is no reason to believe that even if the first and second "conclusions of law" were stricken, the Secretary's third "conclusion of law" and his ultimate action of denial would be any different if further proceedings occurred upon remand.

For the reasons stated, the judgment of the circuit court is reversed; and the decision of the Secretary is affirmed and reinstated.

Reversed; and the Secretary of State's order affirmed and reinstated.

LUND, J., concurs.

JUSTICE GREEN, specially concurring:

The majority places too much emphasis upon plaintiff's recent conviction of driving while his license was revoked (DWR). The purpose of the legislation under which plaintiff's driving privileges were revoked is not to punish persons who have been convicted of driving under the influence of intoxicants or drugs (DUI). Nor is the purpose of the legislation to punish those guilty of DWR. Rather the purpose of the legislation is to protect the public from persons whose ability to drive is likely to be impaired. Punishment is the function of the sentences which the court has the responsibility to impose upon the conviction of the two offenses. I agree that the plaintiff's conduct in driving while his license was revoked is an indication of continued irresponsibility but I do not deem it sufficient, of itself, to justify continued denial of driving privileges eight years after plaintiff's DUI conviction. The conduct giving rise to the DWR conviction focuses only indirectly upon plaintiff's ability to drive safely.

Accordingly, we must confront the other criterion applied by the hearing officer. The hearing officer found plaintiff "is a chemically dependent person." That was established by (1) the evidence submitted by plaintiff of an updated alcohol drug assessment which described plaintiff as a person whose use was problematic with his dependency

in remission; and (2) the evidence of plaintiff's record prior to his 1981 conviction. This determination was not contrary to the manifest weight of the evidence. However, in view of the fact that the evidence conclusively showed that this dependency had been in remission since plaintiff's discharge from a treatment center in 1982, I do not deem this evidence sufficient, of itself, to justify denial of driving privileges.

No doubt our streets would be safer if no one convicted of DUI was ever permitted to drive again but, clearly, the General Assembly did not have that in mind when the legislation involved here was enacted. However, where, as here, such an offender is shown to have a latent substance dependency in remission, the danger from subsequent driving is substantial even when the remission has existed for a substantial time. Nevertheless, no case has been called to our attention where such a latent dependency in remission has, of itself, been held to be sufficient to justify indefinitely a return of a revoked driving privilege. Thus, considering the length of the time plaintiff has been able to refrain from ingestion of abusive substances, I do not deem his latent dependency to be a sufficient basis alone to justify denial of driving privileges. Even when this latent dependency is coupled with evidence of plaintiff's recent irresponsible driving while his license was revoked, I do not consider the evidence to support refusal to restore driving privileges.

The hearing officer also found plaintiff's support systems to be working but he had "failed to carry his burden of proving he had established an adequate support system in order to ensure continuous recovery from his *** dependency." This finding arose largely from testimony plaintiff had attended meetings of Alcoholics Anonymous for a while but had dropped out, stating he did not feel the need for help from such a group. He had not sought help from any other such group. The Secretary's regulations indicate a requirement that a person with continuing latent dependency attach himself or herself to some type of "ongoing support/recovery program." (92 Ill. Adm. Code §1001.440(b)(3) (Supp. Jan. 1, 1987).) The hearing officer also noted that plaintiff had supported his request for restoration of driving privileges with letters of persons attesting his abstinence but was critical of the fact that none of the letters spoke to the question of whether plaintiff would be able to abstain in the future.

In *Lamborn v. Edgar* (1989), 178 Ill. App. 3d 814, 533 N.E.2d 1008, a motorist whose driving privileges had been revoked because of a DUI conviction was also found to have a latent dependency which had been held in check for three years at the time he sought restoration of driving privileges. As has plaintiff here, that motorist had

refused to continue in any organized program for support. The appellate court upheld the Secretary's refusal to reinstate the motorist's license. Here the period of plaintiff's successful battle against his dependency is approximately twice as long as that in *Lamborn.* I deem the time span of remission here to approach that in which denial of restoration of driving privileges is an abuse of discretion and more than a rational person could deem appropriate even when the person seeking restoration does not take part in a formal program of support. However, considering the fact plaintiff has recently committed the irresponsible act of driving while his license was revoked, I deem the evidence barely sufficient to support the denial of restoration of the license.

Accordingly, I concur in the decision to reverse the judgment of the circuit court to affirm the Secretary.