JUAN E. CISNEROS, Plaintiff-Appellee, v. SECRETARY OF STATE, Jessie White, *et al.*, Defendants-Appellants.

First District (5th Division)    No. 1—01—1254

Opinion filed January 24, 2003.

94

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Carol A. Cera, Assistant Attorney General, of counsel), for appellants.

No brief filed for appellee.

JUSTICE REID delivered the opinion of the court:

Following a hearing, defendant Secretary of State (Secretary) denied plaintiff Juan Cisneros' petition for reinstatement of his driving privileges or, in the alternative, issuance of a restricted driving permit (RDP). On plaintiff's complaint for administrative review, the circuit court affirmed the Secretary's denial of reinstatement of full driving privileges but reversed the Secretary's denial of the issuance of the RDP. The Secretary appeals, and we reverse the order of the circuit court which granted plaintiff an RDP.

■ Initially, we note that plaintiff did not file a brief on appeal. Nevertheless, even when an appellee does not file a brief on appeal, the reviewing court can consider the appeal pursuant to the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-33 (1976).

The record on appeal establishes that on August 3, 1981, plaintiff, then 39 years old, was arrested for driving under the influence of alcohol (DUI), which occurred in conjunction with an accident that involved vehicle damage. Plaintiff was convicted in October 1981 and his license was summarily suspended and ultimately revoked in November 1981. In 1986, plaintiff tried to reinstate his license and eventually enrolled in an outpatient rehabilitation program with Hispano Alcoholic Services, Inc., now known as Healthcare Alternative Systems, Inc. (HAS).

1987 Uniform Report

In August 1987, HAS completed an alcohol and drug evaluation uniform report (uniform report) in which plaintiff stated that he currently consumed about 3 beers every other day before dinner and 3 beers every other weekend, but in the past had consumed 10 to 15 beers every weekend and experienced increased tolerance, hangovers, loss of control, and morning relief drinking. Further, plaintiff admitted that his drinking affected him financially and led to arguments with his wife. Plaintiff also stated that he had two DUI arrests and explained that his 1981 DUI resulted when he rear-ended another car as he drove home from a bar about 1 a.m. when the road was slippery from the rain. Plaintiff admitted that he drank 10 beers in four hours that evening and thought he was a "bit drunk" but able to drive. The police did not administer a breath-alcohol test.

HAS classified plaintiff as a Level III problematic use (dependent) based on his 1981 DUI arrest, 1977 reckless driving charge, admitted physical symptoms and problems from alcohol use, and a Michigan Alcoholism Screening Test score of 11, which indicated a present drinking problem. HAS recommended intensive outpatient alcoholism treatment (Levels II and III) for plaintiff.

1988 Update

In a March 1988 uniform report update, plaintiff reported that he had abstained from alcohol since July 1987, attended Alcoholics Anonymous (AA) meetings, felt better physically and enjoyed a greatly improved relationship with his wife. Plaintiff's wife corroborated plaintiff's statements. Plaintiff completed the recommended five weeks of intensive outpatient treatment in December 1987 and 10 weekly sessions of the aftercare program in March 1988. During treatment, plaintiff also attended AA meetings once or twice a week. HAS recommended that plaintiff continue attending AA meetings in order to grow in his abstinence and noted that plaintiff was in remission and complying with his treatment recommendations. Nevertheless, HAS maintained plaintiff's Level III classification based on his disclosed symptoms of dependency in the past.

Apparently, plaintiff did not attempt to reinstate his license until 1997. In a January 1997 memorandum, HAS responded to a request for plaintiff's treatment information by explaining that his records were destroyed because they were more than 10 years old.

1997 Uniform Report

In February 1997, Central State Institute (CSI) prepared a uniform report, which indicated that plaintiff had completed less than seven years of education and had limited comprehension of the English language, so a CSI staff member served as an English-Spanish interpreter. According to the CSI evaluator, plaintiff denied any alcohol use prior to his 1981 DUI arrest and stated that police stopped him for driving without headlights due to a car malfunction. The evaluator noted that although plaintiff reported two DUI offenses in 1978, his driving record only reflected the 1981 DUI. Plaintiff also reported that he no longer attended AA meetings. Further, plaintiff reported that before he abstained from alcohol he drank more times per month than he intended and drank in the morning to "medicate shakes." According to the evaluator, Mildred Cisneros, plaintiff's wife, allegedly stated that before plaintiff abstained from alcohol, she was not aware of the extent of his drinking problem but was concerned about his accidents and revoked license.

Plaintiff's 47 Mortimer-Filkens score indicated that he was a presumptive problem drinker. Further, plaintiff's 1 Substance Use Inventory score indicated minimal impairment in either physical, social, emotional or occupational areas, but his 3 Behavior Assessment Scale score indicated severe dysfunction in those areas. Plaintiff's H Multiple Offender Profile indicated a high risk to repeat the offense without intervention. The evaluator characterized plaintiff's responses

as inconsistent because he allegedly denied any alcohol use prior to his DUI arrest and, although he considered himself an inactive alcoholic, he reported no prior symptoms of dependence. The evaluator classified plaintiff as a Level II (significant risk) apparently based on plaintiff's 1981 DUI and driving record. The evaluator recommended that plaintiff return to a licensed treatment provider to undergo additional intervention based on plaintiff's lack of documentation and "various inconsistencies in his reports."

### 1999 HAS Clarification Letter

HAS counselor Millie Miranda sent the Secretary a letter dated January 27, 1999, to address various inconsistencies between plaintiff's 1987 and 1997 uniform reports. Miranda explained that after HAS classified plaintiff as a Level III in the August 1987 uniform report, plaintiff underwent 100 hours of intensive outpatient treatment and thereafter completed aftercare treatment and attended outside support groups.

Miranda also explained that she met with plaintiff twice to discuss the discrepancies raised in his 1997 uniform report. According to Miranda, plaintiff clarified that he consumed about six beers prior to his 1981 DUI arrest. Plaintiff also explained that he had two DUI arrests prior to his 1981 DUI; one resulted in a court order to view a video whereas the other was reduced to reckless driving.

Then, Miranda stated that plaintiff was classified as a Level II and had completed the required hours of Level II treatment. According to Miranda, plaintiff was classified as a Level II because when he was admitted into the program in 1987, HAS required all Level II and Level III clients to complete the same program requirements regardless of their classification. Miranda concluded that plaintiff's "classification remains the same and there appears to be no need for additional treatment." It is not clear, however, from Miranda's letter whether plaintiff was reclassified from a Level III to a Level II, or whether her statement that plaintiff was a Level II was simply a typographical error.

### 1999 Update

According to a March 1999 uniform report update by CSI, plaintiff confirmed that he had consumed about six beers over three hours before his 1981 DUI arrest and that he had two prior DUI arrests in 1978. Plaintiff also reported that he did not consider himself an alcoholic but recognized his prior problematic use of alcohol. Further, before plaintiff abstained from alcohol, he had experienced hand tremors once a month and consumed alcohol in the morning for relief.

CSI reported no change in plaintiff's Level II classification and stated that plaintiff had completed all previous recommendations and clarified his treatment history as previously requested. CSI made no new recommendations.

Informal Hearing and Denial of RDP

After an informal hearing on plaintiff's petition for an employment RDP, the Secretary issued a denial letter in June 1999. The Secretary found that plaintiff's Level II classification conflicted with his self-admitted alcoholism and his prior Level III classification pursuant to his 1987 uniform report. The Secretary also found that plaintiff's testimony was inconsistent with his statements in his uniform reports regarding whether he last consumed alcohol in 1986 or 1987, whether he admitted to having two DUIs in 1978, whether he consumed beer prior to his 1981 DUI arrest and whether he admitted to drinking in the morning to "medicate shakes." The Secretary concluded that he could not understand the nature and extent of plaintiff's alcohol use until such inconsistencies were resolved. Accordingly, the Secretary recommended that plaintiff seek CSI's assistance in clarifying the noted discrepancies.

2000 Update

On January 27, 2000, CSI completed a uniform update and an addendum that addressed the discrepancies raised by the Secretary. CSI reported that it had reviewed the definitions of "alcohol abuse" and "dependence" with plaintiff, who openly admitted that he abused alcohol in the past but no longer considered himself an alcoholic, which CSI stated was consistent with plaintiff's reported symptomatology and risk level classification. Further, CSI reported that although plaintiff did not recall his exact abstinence date, he stopped consuming alcohol two weeks before he began treatment with HAS, which according to his records was in 1987. CSI also explained that plaintiff did not deny his self-reported pre-1981 DUIs at the informal hearing but, rather, was focusing on his more recent 1981 DUI. Moreover, plaintiff's alleged denial that he consumed alcohol prior to his 1981 DUI arrest likely resulted from a miscommunication between plaintiff and the interpreter. In addition, plaintiff clarified to CSI that although he had occasionally felt "nervous" in the morning after drinking, he did not experience hand tremors or shakes.

CSI explained that HAS classified plaintiff as a Level III in the 1987 uniform report but as a Level II upon admission into HAS's program because, at that time, all Level II and III patients were required to complete the same program requirements. CSI asserted

that although the information from HAS sufficed to document that plaintiff completed treatment, "little weight should be given to [HAS's] diagnosis [of plaintiff as a Level III] as it is not necessarily accurate or reflective of his actual classification due to the time that has passed and the limited records that remain." CSI maintained plaintiff's Level II classification, stated that plaintiff satisfactorily completed all previous recommendations, and made no additional recommendations.

The Administrative Hearing

The formal hearing on plaintiff's petition for reinstatement of his driving privileges or, in the alternative, an RDP was held on January 28, 2000. The parties submitted into evidence all of plaintiff's uniform reports and updates and the 1999 clarification letter from HAS counselor Miranda. Further, counsel for the Secretary submitted into evidence plaintiff's driving record, which indicated that prior to plaintiff's 1981 DUI he was convicted in early 1977 for disobeying a no-turn signal, in late 1977 for reckless driving, and in 1978 for disregarding a traffic control light. Further, plaintiff was ticketed in 1978 for speeding, and the action resulted in a bond forfeiture. Because plaintiff had three or more convictions of moving traffic violations within a 12-month period, he received a discretionary suspension which was effective from May to August 1979. In 1981, plaintiff was arrested and convicted for the DUI at issue on appeal, which occurred in conjunction with an accident that involved vehicle damage. After plaintiff's license was revoked, he was ticketed in May 1983 for driving without a valid license or permit (DWL), in March 1985 for driving while his license was revoked (DWR), and in December 1988 for DWL. Plaintiff was convicted in each instance. In February 1997, plaintiff was ticketed for DWR, which occurred in conjunction with a collision involving property damage, and received supervision.

Several witnesses testified on plaintiff's behalf regarding his abstinence from alcohol for over 13 years and his limited ability to work without driving privileges. Specifically, Herbert DeLeon, plaintiff's nephew for 15 years, testified that plaintiff helped him repair his home or car a couple of times per year. Jose Velez, plaintiff's neighbor for eight years, testified that he hired plaintiff for home repair work and sometimes worked alongside plaintiff. Velez also testified that he frequently socialized with plaintiff and never observed plaintiff consume any alcohol. James Raso, plaintiff's client, testified that he knew plaintiff since 1985, hired him for remodeling work, and never saw plaintiff consume any alcohol. Marie Lingle, plaintiff's sister-in-law since 1974, testified that she frequently socialized with plaintiff and his wife and that plaintiff never consumed alcohol since

his treatment. Lingle also stated that plaintiff relied on the Bible and his church to stay sober. In addition, Eugenio Jorge, plaintiff's minister, submitted a letter stating that he knew plaintiff for five years and saw him about three times per week. Jorge asserted that plaintiff was always sober and never consumed alcohol.

Plaintiff testified, apparently with great difficulty despite the use of an English-Spanish interpreter, that before he began treatment in 1987, he never realized that he had a drinking problem. Plaintiff testified that statements CSI attributed to him in the 1997 uniform report and characterized as inconsistent resulted from either his misinterpretation of CSI's questions or CSI's misinterpretation of his answers. Plaintiff's testimony at the hearing was sometimes consistent with his statements in his uniform reports regarding his past consumption of alcohol, his driving record, his wife's concerns with his drinking and his treatment with HAS. However, his testimony in some parts of the transcript was very confusing, contradictory and unintelligible, particularly concerning his self-reported pre-1981 DUIs and his current attendance at AA meetings.

Plaintiff testified that he maintained his sobriety by attending church and reading the Bible and that his inability to drive prevented him from maintaining regular employment. Plaintiff explained that he was a self-employed handyman and did plumbing, carpentry, drywall and painting work. Plaintiff lost numerous jobs, however, because either his wife, a friend, or the client could not drive him to the work site, public transportation was not available, or he could not transport the necessary tools on a bus. Although plaintiff generally tried to maintain a normal weekday work schedule, potential clients called him with jobs that required immediate attention. Consequently, if plaintiff could not make last-minute transportation arrangements, he could not accept the proffered work.

Mildred Cisneros, plaintiff's wife of 24 years, testified that before plaintiff began treatment in 1987, she was not aware of the extent of his drinking because he drank primarily on the weekends and with a group of friends with whom he no longer associated. Mildred Cisneros became aware of plaintiff's drinking problem after he entered treatment and HAS counselors and AA people insisted that she attend some interviews and Al-Anon meetings. Mildred Cisneros stated that she would now be aware if plaintiff ever drank alcohol. Further, when she and plaintiff attended numerous social and family functions, plaintiff never consumed any alcohol and refused any offers of alcohol.

Mildred Cisneros testified that she generally cannot drive plaintiff to his handyman jobs during the week because she works in a factory from 7 a.m. to 3:30 p.m. on weekdays. Consequently, plaintiff, who

often needs to carry heavy tools and ladders on top of a vehicle to a jobsite, has lost the opportunity to perform about three jobs per month. When counsel asked Mildred Cisneros for details regarding how much work plaintiff missed, the hearing officer interrupted and stated, "Counsel, you don't need to establish undue hardship in this case. So this is not entirely necessary."

The Secretary's Denial Order

In his findings and recommendations, the hearing officer concluded that plaintiff had abused alcohol in the past and failed to prove that his alcohol problem was resolved. The hearing officer also concluded that plaintiff failed to prove that he would be a safe and responsible driver and would not endanger the public safety and welfare. Further, the hearing officer concluded that reasonable alternative job-related transportation was available to plaintiff. Accordingly, the hearing officer recommended that the Secretary deny plaintiff's petition for reinstatement of full driving privileges or, in the alternative, an RDP.

The hearing officer found that the evidence generally supported plaintiff's claim of abstinence from alcohol since 1987. However, the hearing officer found that plaintiff did not provide sufficient documentation to support his reclassification from a Level III to a Level II; plaintiff's testimony that he cannot ever drink safely in the future was inconsistent with his description of himself in the 1997 uniform report as an "inactive alcoholic"; and CSI's 1997 uniform report and subsequent updates were incomplete because the evaluators showed no knowledge of plaintiff's 1987 uniform report or 1988 update with HAS.

The hearing officer found that plaintiff's admitted withdrawal and dependency symptoms indicated that he was rightly classified by HAS as a Level III in 1987 and 1988, and that plaintiff had not since been systematically examined and reevaluated. Moreover, the hearing officer found that plaintiff's testimony regarding regular attendance at AA meetings was inconsistent with his uniform reports, which showed no recent involvement with AA. Further, the hearing officer noted that there was no clear evidence that plaintiff followed the recommendation in the 1997 uniform report to return to a licensed treatment provider to undergo additional intervention.

The hearing officer found that plaintiff primarily failed to prove he was no longer an undue risk as a driver because his "evaluation chain" was incomplete, inaccurate and inconsistent, and he lacked "a treatment needs review." Noting that the Secretary may disregard the findings of an evaluation if the evidence indicated it was unreliable or incomplete, the hearing officer stated that "[p]rior to any further ap-

plication for hearing, the [plaintiff] should return to the evaluator, with this Order in hand, a new, completed and accurate alcohol use profile should be developed, and the various problems raised here should be resolved."

On March 14, 2000, the Secretary adopted the findings and recommendations of the hearing officer and denied all relief requested by plaintiff.

Circuit Court Review

Plaintiff subsequently filed a complaint for administrative review of the denial in the circuit court. Plaintiff contended that the Secretary's denial was arbitrary, capricious, and against the manifest weight of the evidence, which plaintiff argued established conclusively that plaintiff, whether classified as a Level II or a Level III, had abstained from alcohol for over 12 years and had an ongoing support system to maintain his sobriety.

At oral argument on plaintiff's complaint, the circuit court questioned the parties regarding plaintiff's driving violations after his license was revoked, alleged inconsistent statements to various evaluators over the years, and alleged failure to do additional work to clarify any prior inconsistencies. The circuit court also raised the issues of plaintiff's "inability to communicate" in English and use of interpreters. Plaintiff's counsel added that plaintiff, who was only 5 feet 2 inches tall and weighed 135 pounds, was a self-employed handyman who tried to transport heavy tools and materials to his jobs as best he could. Plaintiff's counsel also explained that plaintiff had insurance when he was ticketed in 1997 for DWR.

In March 2001, the circuit court denied plaintiff's request for reinstatement of his full driving privileges, but granted plaintiff's request for an RDP. Subsequently, the circuit court denied the Secretary's request to stay enforcement pending appeal based upon plaintiff's lengthy period of sobriety, the absence of any alcohol-related incident since plaintiff's 1981 DUI, and plaintiff's type of employment, which involved transporting numerous and heavy tools to various jobsites.

On appeal, the Secretary contends that the hearing officer's decision to deny plaintiff's petition was not against the manifest weight of the evidence because plaintiff failed to prove that his alcohol problem had been resolved and that he would not endanger public safety once his driving privileges were restored. The Secretary contends that the inconsistencies in plaintiff's testimony, the inconsistent and incomplete information contained in his uniform reports, and plaintiff's driving violations after his license was revoked precluded the Secretary from

granting him relief. The Secretary also moved this court to stay the circuit court's order pending appeal. After initially denying the Secretary's motion because it failed to serve notice on plaintiff, this court granted the Secretary's renewed motion to stay, to which plaintiff did not respond.

■ Upon review, an administrative agency's factual findings and conclusions are considered *prima facie* true and correct. 735 ILCS 5/3—110 (West 2000); *Murdy v. Edgar*, 103 Ill. 2d 384, 391 (1984); *Britt v. Edgar*, 192 Ill. App. 3d 469, 472 (1989). Courts may not interfere with an agency's discretionary authority unless that power is exercised in an arbitrary and capricious fashion or the decision is contrary to the manifest weight of the evidence. *Murdy*, 103 Ill. 2d at 391; *Britt*, 192 Ill. App. 3d at 472. The agency's decision will be found contrary to the manifest weight of the evidence only when the opposite conclusion is clearly evident. *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 538 (1997). After viewing the evidence here in the light most favorable to the Secretary, we do not believe the opposite conclusion, that plaintiff is entitled to an RDP, is clearly evident under this record.

■ The relevant factors in determining whether to issue an RDP are the degree of hardship that deprivation of driving privileges imposes upon the applicant, whether alternative means of transportation are available, and whether issuance of the permit would prove a danger to public safety and welfare. *Britt*, 192 Ill. App. 3d at 473; 92 Ill. Adm. Code §§ 1001.430(f), 1001.440(b) (2000). The relevant inquiry in RDP cases is the danger to public safety and welfare. *Murdy*, 103 Ill. 2d at 392; *Britt*, 192 Ill. App. 3d at 473. The Secretary exercises considerable discretion in determining whether to reinstate driving privileges and has promulgated regulations that set forth the requirements for reinstatement. 92 Ill. Adm. Code § 1001.400 *et seq.* (2000). These regulations have the force and effect of law. *O'Neil v. Ryan*, 301 Ill. App. 3d 392, 396 (1998).

■ Here, to receive an RDP after his DUI-related license revocation, plaintiff must prove by clear and convincing evidence that he does not have a current problem with alcohol; that he is a low or minimal risk to repeat his past abusive behaviors and operate a vehicle while he is under the influence of alcohol; and that he has complied with all other standards as specified in the regulations. 92 Ill. Adm. Code § 1001.440(b) (2000). Relevant factors include plaintiff's age; whether he drove while his license was revoked; the duration of his present employment; the number of years he was licensed to drive; the number, severity and frequency of his accidents or traffic violations; his efforts at rehabilitation or reform of past driving practices;

the demeanor and credibility of plaintiff and his witnesses at the hearing; and the credibility of and weight given to plaintiff's documentary evidence. 92 Ill. Adm. Code § 1001.430(c) (2000). If the record contains any evidence that fairly supports the agency's decision, that decision must be upheld. *Christiansen v. Edgar*, 209 Ill. App. 3d 36, 43 (1991).

◼ In the present case, we note some flaws in the Secretary's findings that plaintiff failed to comply with recommendations to document his successful completion of treatment and clarify certain discrepancies in his uniform reports. Moreover, we agree with the circuit court that plaintiff established that his deprivation of employment-related driving privileges imposed an undue hardship upon him and that alternative means of transportation were not available. Clearly, the hearing officer's findings, *i.e.*, that plaintiff worked regular weekday hours and that he could either use public transportation or be driven by his wife or "employees" to and from jobsites, were against the manifest weight of the evidence. Specifically, the evidence established that plaintiff declined numerous job opportunities because he could not transport heavy equipment on a bus. Further, plaintiff's wife, who worked in a factory, could only drive him to jobs on the weekend or in the evening, and plaintiff did not have any employees to drive him to work. In addition, the hearing officer erred at the hearing by stating that plaintiff's presentation of hardship evidence was "not entirely necessary."

Nevertheless, plaintiff, who was ticketed four times for driving after his privileges were revoked, also had the burden to prove by clear and convincing evidence that the issuance of an RDP would not endanger the public safety and welfare. On that issue, we cannot say, viewing the evidence in a light most favorable to the Secretary, that no rational trier of fact could agree with the Secretary that plaintiff failed to carry his burden of proof. The evidence before the Secretary in this case established that after plaintiff's license was revoked due to his 1981 DUI conviction and after he claimed to have put into place a support system to help him avoid his past misconduct, he was convicted of DWL in 1983 and 1988, was convicted of DWR in 1985, and received supervision for DWR in 1997 in an action that involved a collision and property damage. See *Reynolds v. Edgar*, 188 Ill. App. 3d 71, 75 (1989) ("When the underlying revocation stems from a DUI conviction, DWR is treated by the legislature as one of the most serious driving offenses one can commit in the absence of bodily injury"). Moreover, plaintiff presented no testimony at the hearing or explanation in his complaint for administrative review regarding the circumstances surrounding his traffic violations following the revocation of his driving privileges.

Despite strong evidence that plaintiff maintained his sobriety for

several years and did not have a reasonable alternative mode of transportation for work, plaintiff's driving record fairly supported the Secretary's decision to deny plaintiff an RDP. Compare *Stewart v. Ryan*, 229 Ill. App. 3d 912, 915-16 (1992) (Secretary properly denied an RDP to the plaintiff based on his "terrible driving record," which included two speeding violations before 1985, two DUI convictions in 1986, and a DWR conviction in 1987), and *Reynolds*, 188 Ill. App. 3d at 75-76 (Secretary properly denied an RDP to the plaintiff whose record included two suspensions before 1981 as a result of multiple speeding convictions, a 1981 DUI conviction, and a 1987 DWR conviction), with *Britt*, 192 Ill. App. 3d at 474 (Secretary improperly denied an RDP to the plaintiff whose record included 1979 speeding and 1981 DUI convictions but no driving violations during the several years that his license was suspended or revoked).

In our limited role on review, we cannot reweigh the evidence or substitute our judgment for that of the administrative agency (*Sanchez v. Ryan*, 315 Ill. App. 3d 1079, 1084 (2000)), particularly here where plaintiff did not provide any explanation regarding the circumstances surrounding his driving offenses during the time his license was revoked. Plaintiff's driving record fairly supported the Secretary's finding that plaintiff failed to prove that he would not endanger public safety and welfare. Thus, the circuit court erred by not upholding the Secretary's decision to deny plaintiff an RDP. See *Christiansen*, 209 Ill. App. 3d at 43.

Accordingly, we reverse the judgment of the circuit court directing the Secretary to grant plaintiff an RDP. We affirm the circuit court's judgment that upheld the Secretary's decision to deny reinstatement of plaintiff's driving privileges.

Affirmed in part; reversed in part.

BUCKLEY and QUINN, JJ., concur.[1]

---

[1]Justice Buckley's name appears on the original Rule 23 order filed October 25, 2002. In granting the motion to publish, this court has made no substantive changes to the text. Justice Buckley has since retired from the court.