DANIEL J. BREINER, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

Fourth District No. 4—84—0141

Opinion filed February 20, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Susan C. Weidel, Assistant Attorney General, of Chicago, of counsel), for appellant.

Don Cary Collins, of Belleville, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On July 1, 1983, Jim Edgar, Secretary of State, State of Illinois (Secretary) entered an order denying a petition filed by plaintiff, Daniel Breiner, requesting either the reinstatement of his driving privileges or the issuance of a restricted driving permit. Pursuant to the administrative review provisions of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*), plaintiff filed a complaint in the circuit court of Sangamon County. On January 6, 1984, the circuit court entered an order determining that the Secretary's decision was contrary to the manifest weight of the evidence and ordering the Secretary to reinstate plaintiff's driving privileges. The Secretary has appealed. We conclude that (1) the Secretary's denial of full driving privileges should be upheld; but (2) the Secretary should have issued a restricted driving permit.

The record indicates that on February 28, 1983, plaintiff filed a written request for reinstatement of his driving privileges. The following evidence was introduced at administrative proceedings conducted by a hearing officer. Certain information contained in plaintiff's driver's license file maintained by the Secretary indicated that plaintiff was (1) born on December 18, 1960; (2) issued an Illinois driver's license on July 29, 1978; (3) convicted on May 16, 1979, for driving too fast for road conditions; and (4) convicted on April 29, 1980, for the offense of reckless conduct (Ill. Rev. Stat. 1979, ch. 38, par. 12—5). This conviction was based upon plaintiff's involvement in a two-vehicle collision in which two individuals were fatally injured.

The information introduced at the hearing further indicated that pursuant to section 6—205(a)(10) of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 6—205(a)(10)), plaintiff's driver's license was revoked on May 22, 1980, following his conviction of the offense of reckless conduct arising from the use of a motor vehicle.

Plaintiff testified at the hearing as follows. On the evening of the collision, plaintiff, who lived in Albers, and three of his friends drove in plaintiff's car to a tavern located in New Baden. They remained in the bar from approximately 8 p.m. until midnight, and plaintiff consumed six or seven 12 oz. beers. After leaving the bar, plaintiff and his friends got in the plaintiff's car. As plaintiff was driving his friends home, plaintiff was involved in a two-vehicle collision. However, plaintiff stated that he did not remember any of the details concerning the accident because he "blacked out."

Plaintiff further testified that (1) at the time of the hearing, he was 22 years old, lived at home with his parents, and drank two or three beers per week; and (2) from the date of the accident, September 8, 1979, until the day his driver's license was revoked, May 22, 1980, he was given no traffic citations and was involved in no accidents. Plaintiff also stated that he believed he would be a safe driver and would be careful and cautious and follow all the rules of the road.

Plaintiff's mother testified that (1) she had observed defendant driver after the collision and before his driver's license was revoked and during this time plaintiff was always cautious and careful; and (2) since the collision, he keeps a "lookout" even as a passenger.

An alcohol evaluation report indicated that although he regularly consumed beer, plaintiff did not have an "alcohol problem."

## REINSTATEMENT OF FULL DRIVING PRIVILEGES

Section 6—208(b) of the Code sets forth the standard for determining whether an individual's full driving privileges should be reinstated. Section 6—208(b) provides, in part:

> "[T]he Secretary of State shall not issue such license unless and until he is satisfied after investigation of such person that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare." Ill. Rev. Stat. 1981, ch. 95½, par. 6—208(b).

The Secretary, pursuant to section 2—104(b) of the Code (Ill. Rev. Stat. 1981, ch. 95½, par. 2—104(b)), has promulgated certain regulations which have the force and effect of law. (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 387 N.E.2d 320.) One such regulation, not in effect at the time of the hearings but in effect when the hearing officer made the findings and recommendations, provides that in order to reinstate an individual's driving privileges, the Secretary must determine:

> "[T]he public health and safety must not be endangered by the reinstatement of the applicant's drivers license. The applicant, if restored to driving privileges, must operate a motor vehicle safely so as not to be a danger to himself or herself or other drivers on the road. The mere passage of time since the date of revocation is not sufficient evidence." 7 Ill. Reg. 7501, 7527 (1983).

The Secretary maintains that he properly denied plaintiff's request for reinstatement of full driving privileges because (1) plaintiff was not a credible witness; and (2) plaintiff's driving record showed frequent and severe infractions.

The record indicates that although plaintiff was required to show that he was entitled to the reinstatement of his driving privileges, plaintiff's testimony as to his rehabilitation and reform was vague and unresponsive. When asked by his attorney if he would be a careful and cautious driver and if he would obey the rules of the road, plaintiff offered only one word affirmative responses. In addition, when asked to explain why he would be a safe and responsible driver, plaintiff responded: "I just would."

Plaintiff also offered self-serving and conflicting testimony in which he attempted to minimize his alcohol consumption. At the administrative proceeding plaintiff testified that he drank two or three beers approximately two times per week. During a subsequent alcohol evaluation session, plaintiff told the alcohol counselor that he drinks two or three beers only once or twice a month.

As to the frequency and severity of plaintiff's driving record, the evidence indicates that within approximately one year after he obtained his driver's license, plaintiff was involved in two incidents which resulted in convictions for driving too fast for conditions and for reckless conduct. The collision upon which the reckless conduct conviction was based occurred after plaintiff had consumed "six or seven beers" and resulted in the death of two individuals.

■■ ■ We recognize that courts of review should not reweigh the evidence and determine what is the preponderance of the evidence, and should set aside an agency decision only if it is contrary to the manifest weight of the evidence. (*Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 426 N.E.2d 877.) Accordingly, based on the foregoing evidence and the fact that mere passage of time since the date of revocation is not sufficient evidence (7 Ill. Reg. 7501, 7527 (1983)), we conclude that the Secretary's decision to deny plaintiff's request for reinstatement of full driving privileges was not contrary to the manifest weight of the evidence.

### ISSUANCE OF A RESTRICTED DRIVING PERMIT

Although plaintiff's written request to the Secretary does not expressly refer to the issuance of a restricted driving permit, both the Secretary's decision and the parties' arguments on appeal concern the propriety of granting plaintiff such a permit. Accordingly, we conclude that this issue is properly before us on review.

Section 6—205(c) of the Code sets forth the procedures for granting a restricted driving permit. That section provides:

> "[T]he Secretary of State in his discretion *** may, if application is made therefor, issue to [a person whose license has been

revoked] a restricted driving permit granting the privilege of driving a motor vehicle between his residence and his place of employment or within other proper limits, except that this discretion shall be limited to cases where *undue hardship* would result from a failure to issue such restricted driving permit." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 95½, par. 6—205(c).

■ In regard to the issue of whether a refusal to grant a restricted driving permit would create an undue hardship, plaintiff testified as follows. Plaintiff was employed full time by Kalmer Lumber Company in Albers, which was located approximately one mile from his home. His employer had recently informed him that he would be terminated if he did not have a driver's license. Plaintiff also worked part time in his home repairing pneumatic staplers and nailers for the Bostitch Division of Textron, Inc., of Maryland Heights, Missouri. He testified that it was occasionally necessary for him to go to Maryland Heights to pick up parts that he needed in his work and to attend training programs. He further testified that he would like to attend college in either Centralia or Belleville, but both Centralia and Belleville are more than 40 miles from his home.

Plaintiff also introduced the affidavits of his two employers. The owner of the lumber company where plaintiff was employed full time stated that (1) although plaintiff was originally hired for a position which did not require a driver's license, "it is [now] of absolute necessity" that plaintiff have a driver's license in order to continue his current employment; and (2) he had known plaintiff all of plaintiff's life and believed that it would not endanger the public safety or welfare if the Secretary granted driving privileges to plaintiff. The district sales manager of the company for which plaintiff worked part time stated that it would be "extremely beneficial" if plaintiff could pick up supplies and attend training programs in Maryland Heights, Missouri.

The Secretary maintains that his refusal to grant plaintiff a restricted driving permit was adequately supported by the evidence. The Secretary submits that with respect to his part-time job and his desire to go to college, plaintiff failed to show that his inability to drive was anything more than an inconvenience to himself, his family, and his friends. We agree. However, we deem that the evidence is overwhelming that plaintiff would lose his full-time job if no permit is granted and that would constitute an undue hardship.

Alternatively, the Secretary argues that even if the likely loss of plaintiff's full-time employment constitutes an undue hardship, the Secretary's decision was proper because, based on his past driving record, plaintiff would pose a serious threat to the public safety and

welfare which would outweigh any hardship suffered by plaintiff.

We might agree with this argument if plaintiff were being granted unlimited driving privileges. However, we order that the Secretary issue a restricted driving permit to plaintiff which would allow him to drive to and from work, and to do any reasonably necessary driving required by his work. Such restrictions will allow plaintiff to retain his full-time employment, but will prevent the type of recreational nocturnal excursions which previously resulted in plaintiff's tragic collision.

The Secretary's denial of the restricted driving permit was contrary to the manifest weight of the evidence.

We deem it appropriate to consider that the purpose of the Code's driver's license revocation procedure is to protect the public safety and welfare and not to punish the person whose license is revoked. Any necessary punishment should be obtained through criminal procedures.

■ We now address plaintiff's contention that certain of the hearing officer's rulings and conduct at the hearing resulted in "substantial prejudice" to plaintiff.

Plaintiff submits that the hearing officer erred in allowing the Secretary's counsel to question plaintiff concerning his consumption of intoxicating liquor on the evening of the collision. Plaintiff attempts to analogize this situation to certain tort cases brought to recover for personal injuries. In those cases it was held to be improper to produce evidence of the consumption of alcohol by a party whose exercise of care was in question unless there was enough evidence presented to raise an issue as to whether the party was intoxicated at the time of the occurrence in issue. (*Jeanguenat v. Zibert* (1979), 78 Ill. App. 3d 948, 397 N.E.2d 1235; *Clay v. McCarthy* (1979), 73 Ill. App. 3d 462, 392 N.E.2d 693.) Such evidence is deemed to be highly prejudicial and of little probative value. In those cases, the issue was whether the party was in the exercise of care at a particular time. Here, the issue is broader and includes the question of whether the party is likely to be a safe driver in the future. In such a case, the amount of liquor that the driver had consumed is a proper consideration for the Secretary. Furthermore, because the proceeding is an administrative one without a jury, the danger of prejudice is less.

■ ■ Plaintiff also submits he was prejudiced by the introduction of certain statements signed by witnesses to the collision and certain reports prepared by a private investigator who was hired by the law firm representing the people who died in the collision in a civil action against plaintiff. The admission of incompetent evidence in an admin-

istrative proceeding is not grounds for reversal if the decision of the administrative agency or officer is supported by substantial competent evidence and the admission of the evidence does not deprive the objecting party of fundamental due process. (See Ill. Rev. Stat. 1983, ch. 110, par. 3—111(b); *La Grange Bank No. 1713 v. Du Page County Board of Review* (1979), 79 Ill. App. 3d 474, 398 N.E.2d 992.) Substantial evidence supported the Secretary's decision to deny restoration of full driving privileges and introduction of these statements did not deny due process to plaintiff. As this decision is the only decision of the Secretary which we uphold, no error requiring the setting aside of a decision of the Secretary occurred.

Plaintiff also maintains prejudice resulted from the introduction of certain items of evidence which were inaccurate or unduly prejudicial. However, the hearing officer either struck each item or stated that he would not consider each such item cited. No error resulted.

■ Plaintiff finally contends that he was denied due process of law because the hearing officer in this case allegedly serves as an attorney for the Secretary in other cases and, as a result, could not be fair and impartial. Plaintiff has not cited any portion in the record of this case which supports this allegation. Accordingly, we need not address this issue.

For the reasons stated herein, we reverse the circuit court's decision which ordered reinstatement of full driving privileges, affirm that portion of the Secretary's decision which denied the reinstatement of full driving privileges, reverse that portion of the Secretary's decision which denied plaintiff's request for a restricted driving permit, and remand this cause to the Secretary with directions to issue a restricted driving permit to plaintiff in accordance with the views expressed in this opinion.

Affirmed in part, reversed in part, and remanded with directions.

MILLS and TRAPP, JJ., concur.