THOMAS MARKOWSKI, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

First District (3rd Division)   No. 85—3610

Opinion filed December 31, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Candida Miranda, Assistant Attorney General, of Chicago, of counsel), for appellant.

Rick Allen White, of Chicago, for appellee.

JUSTICE WHITE delivered the opinion of the court:

Thomas Markowski filed a petition with defendant, the Secretary of State, requesting a restricted driving permit (permit) following the suspension of his driving privileges for driving under the influence of alcohol. Defendant denied plaintiff's request, and plaintiff sought administrative review of this decision in the circuit court of Cook County. After a hearing the circuit court reversed defendant's decision and directed defendant to issue plaintiff the permit requested. Defendant now appeals from that order contending that the denial of plaintiff's request was proper and not contrary to the manifest weight of the evidence.

The record discloses that plaintiff is 31 years of age and has been employed as a United Parcel Service (UPS) driver for seven years. While he was vacationing in California in 1984, he was convicted of driving under the influence of intoxicating liquor. As a result the California court imposed a 90-day restriction on his driving privileges which limited his driving to employment-related activity and transportation to and from work. On November 6, 1984, defendant revoked plaintiff's driving privileges based upon that conviction, and after plaintiff was convicted of violating a "no-turn" sign in January 1985, defendant notified him that his suspension had been extended for another year.

Thereafter plaintiff applied for a permit and a hearing on his application was held on June 6, 1985. Plaintiff was represented by counsel, and, at the outset of the hearing, plaintiff's driving record, alcohol assessments, and remedial education summaries, as well as other supporting documentation submitted by plaintiff, were admitted into

evidence.

Plaintiff then detailed the circumstances surrounding the California drunk-driving conviction which led to his present dilemma. He explained that on one afternoon during his vacation, he and a friend began drinking about 4 p.m., and in the 7-hour period which followed, he consumed 10 beers and 5 shots of whiskey. He then proceeded to another bar, where he drank three more beers and two more shots. When he attempted to drive back to his hotel, he became tired and disoriented and pulled over to the side of the road to sleep and refresh himself. About an hour later he got back on the road, which was not well lit, drove slowly, and was stopped by a citizen who called the police. He scored a .19% alcohol on the breathalyzer test that was administered to him and subsequently entered a plea of guilty to the charge through an attorney.

Plaintiff testified that prior to that incident he had been arrested for driving while under the influence of liquor on January 2, 1981, but that charge was reduced to reckless driving. He also stated that he had not received any traffic citations in the seven years he had driven for UPS, although he had two accidents termed "avoidable" by the company which resulted in minor vehicle damage. He further stated that he had not missed any work in the last three years and had learned a valuable lesson from this experience.

As to his present drinking habits, plaintiff explained that he no longer drank whiskey and that he had cut down on his consumption of alcoholic beverages considerably; he has restricted himself to drinking three beers on Friday nights and an occasional glass of wine at a family dinner. He explained that he started drinking when he was about 17 years of age. At that time his parents were in the midst of a divorce and he became distressed over the situation; now, however, he believed that he could handle stress in more meaningful ways without resorting to alcohol. He further stated that he had never been diagnosed as an alcoholic and acknowledged that his tolerance of alcohol has subsided over the years so that now the consumption of four beers made him "wobbly."

Under examination by his own counsel, defendant admitted that the last time he became intoxicated was at a friend's wedding, which was held on May 18, 1985; he added, however, that he did not drive on that occasion. He also stated that he did not violate the terms of the suspension of his driving privileges once he became aware of its imposition in March 1985 and explained that prior to that time he was under the impression that his license was unrestricted after the California limitations ended in November 1984. When he was notified of

the Illinois suspension, he immediately informed his employer of the situation, and the company advised him that if he was unable to obtain a hardship permit he would be terminated. He also stated that he had to postpone his wedding plans because of the uncertainty of his employment situation.

Plaintiff submitted an updated alcohol assessment report prepared by his alcohol counselor indicating that he showed no evidence of physical dependency on alcohol, that he seemed to have remediated his past drinking experience, and that he has not drunk to the point of intoxication in six months. When queried about this latter point, he admitted that he did not inform his counselor of his indiscretion at the wedding, which was held just prior to their meeting, because he did not think it was important. He also admitted that he had experimented with cocaine and marijuana in the past but was not currently using either of these substances and that he did not follow up on the outpatient counseling recommended to him because he did not believe it was necessary.

Plaintiff then introduced a letter from his fiancee in which she stated that plaintiff's behavior did not indicate that he had a drinking problem, and a letter from a fellow driver, concurred in by 17 others, which recommended that plaintiff's driving privileges be restored. Both were admitted into evidence.

Mike Michaels, the keeper of the records and benefits administration for UPS, verified plaintiff's good work and attendance record and requested that defendant issue a hardship license to plaintiff. He explained the training and annual evaluation procedures which are set up within the company for all drivers and reported that plaintiff had passed all of them. He also stated that he had just advised plaintiff of the counseling services that are available to him through the company and that no other job would be offered to plaintiff if his driving privileges were not reinstated.

Plaintiff's fiancee, Adelaide Reiner, testified that she and plaintiff had been engaged for four years and that although he had a tendency to overdrink four years ago, she did not consider it a problem and has observed that he now confined himself to drinking about three beers on the weekend. She could not remember the last time he was intoxicated and did not recall that he behaved differently at the wedding they attended on May 18, 1985. She also stated that she has never been concerned about plaintiff's past drinking and did not say anything to the contrary to the alcohol counselor; in fact, she stated that she had not been interviewed by him even though the assessment form indicated otherwise.

On the basis of this evidence, the hearing officer recommended that plaintiff's request for a permit be denied. In so finding the hearing officer concluded that the evidence showed that plaintiff's past use of alcohol caused specific identifiable problems; however, the nature and extent of his use of alcohol was not established. The hearing officer also noted the conflicting evidence in the record which prevented her from making a determination as to the nature and extent of plaintiff's use or abuse of alcohol and that plaintiff had therefore failed to carry his burden of proving that he would be a safe and responsible driver who would not endanger the public safety and welfare if a permit were issued to him. The hearing officer also concluded that plaintiff's past driving record, which consisted of two separate arrests for driving under the influence, revealed a disregard for the public safety and traffic laws and currently presented an unacceptable risk to the public safety and welfare.

The findings and recommendation of the hearing officer were adopted by defendant, and on August 5, 1985, defendant entered an order denying plaintiff's request for the issuance of a permit. Plaintiff sought administrative review of this order, and on November 7, 1985, the court found that there was no evidence in the record to indicate that plaintiff would not be a safe and responsible driver while restricted to work-related activities, and that he would suffer undue hardship by his loss of employment if it were not granted. The court also found that plaintiff did not present a substantial risk to the public safety and remanded the cause to defendant for the purpose of issuing a permit consistent with that order. This appeal follows.

■ Under the provisions of the administrative review statute, the findings and conclusion of an administrative agency on questions of fact are to be considered *prima facie* true and correct. (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) This statute has been construed to mean that courts may not interfere with the discretionary authority vested in administrative bodies unless that authority is exercised in an arbitrary or capricious manner or the administrative decision is against the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) Consequently, it is not the function of a court of review to reweigh the evidence or make an independent determination of the facts; rather, the sole function of the reviewing court is to ascertain whether the final decision of the agency is just and reasonable in light of the evidence presented. *Sheldon v. Edgar* (1985), 131 Ill. App. 3d 489, 475 N.E.2d 956.

■ Under the Illinois Vehicle Code (Code), defendant has the authority to reinstate driving privileges or to issue restricted driving

permits (Ill. Rev. Stat. 1981, ch. 95½, pars. 6—206, 6—208); however, once driving privileges have been revoked, reinstatement is not automatic (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085). Section 6—205 of the Code provides that defendant, in his discretion and upon application, may issue a permit granting limited driving privileges for work-related purposes where undue hardship would result from a failure to issue such permit. (Ill. Rev. Stat. 1981, ch. 95½, par. 6—205(c).) This language has been construed to be permissive rather than mandatory (*Foege v. Edgar* (1982), 110 Ill. App. 3d 190, 441 N.E.2d 1267); accordingly, it has been held that that defendant is not required to issue a permit merely upon the showing of undue hardship, but must exercise his discretion based upon the public interest, and should not issue such a permit unless it has been determined that the granting of the permit would not endanger the public safety or welfare (*Cusack v. Edgar* (1985), 137 Ill. App. 3d 505, 485 N.E.2d 1145; see also *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085).

In the instant case it is evident that plaintiff, a professional driver, has experienced serious hardship due to the suspension of his driving privileges and that he is in danger of losing his position if he is not granted a permit. These facts were not disputed by defendant; however, it is clear that lack of undue hardship did not form the basis of defendant's denial of plaintiff's request. Rather, defendant concluded that plaintiff did not sustain his burden of proving that he would be a safe and responsible driver who would not endanger the public safety and welfare if granted a permit and that given his past driving record he currently poses an unacceptable risk to the public safety and welfare.

These conclusions were based on the evidence which showed that although plaintiff's updated alcohol assessment indicated that he appeared to have remediated his past alcohol problem and did not drink to the point of intoxication in six months, plaintiff himself testified that he had been intoxicated at a friend's wedding shortly before the interview with the counselor and that plaintiff did not inform the counselor of the incident, thinking it was unimportant. The validity of the updated assessment form was also called into question by the revelation that plaintiff's fiancee had never been interviewed by the alcohol counselor, yet the report contained her reflections on plaintiff's past drinking habits and present condition, indicating that she had been interviewed. In addition, the hearing officer noted the evidence of plaintiff's current use of alcoholic beverages and his failure to follow up on his counselor's initial suggestion that he seek outpatient

counseling after completing an alcohol-related remedial education program because he did not think he needed it. The hearing officer further commented that the demeanor of plaintiff indicated that he was struggling with the fact that his alcohol problem might be of a more serious nature than he wanted it to be, placed little weight on the letters submitted by plaintiff's fiancee and friends because of the lack of objectivity regarding plaintiff's condition, and found that plaintiff's driving record, which contains two alcohol-related arrests, was a significant factor in denying his request.

Plaintiff maintains that defendant's conclusion is unwarranted and shortsighted in light of the evidence which reveals that in the seven years he has been driving for UPS, he did not receive any traffic citations while operating the company vehicle. He also calls our attention to his safety and attendance record as attested to by a representative of his employer. Based on this evidence he concludes that the issuance of a permit restricting his driving activities to work-related activities would not endanger the public safety and urges this court to affirm the order entered by the circuit court.

A similar argument was made and rejected by this court in *Foege v. Edgar* (1982), 110 Ill. App. 3d 190, 441 N.E.2d 1267. In that case a 35-year-old driver of a beverage truck, who had a family and had not received a work-related traffic citation in 15 years, sought a permit so that he could continue his employment. Although it was apparent that hardship would befall the applicant if a permit was not granted, this court held that it would be shortsighted to focus solely on plaintiff's record while driving his truck and that it was necessary to consider the person's entire record when examining and evaluating his application for a permit. 110 Ill. App. 3d 190, 196, 441 N.E.2d 1267.

In the case at bar plaintiff's total driving record does not reveal the number or severity of offenses registered to the applicant in *Foege*; however, we still find it significant that he was twice arrested and once convicted of driving while under the influence of alcohol. This record takes on added significance in light of the concern expressed by defendant that plaintiff is not addressing the scope of his alcohol problem, that he abstains from liquor for short periods of time, but returns to it, and that he did not find it necessary to comply with his counselor's recommendation to pursue outpatient counseling. In addition, defendant's finding that plaintiff's credibility was adversely affected by his admission that he had not informed his counselor of the fact that he became inebriated at a friend's wedding about three weeks before the hearing on his application because he did not think it was important, is well taken. Moreover, the corrobora-

tive evidence of plaintiff's sobriety was further called into question by the revelation that plaintiff's fiancee had never been interviewed by the counselor, yet remarks attributed to her in such an interview were contained in the updated alcohol assessment report. See *Cusack v. Edgar* (1985), 137 Ill. App. 3d 505, 485 N.E.2d 1145.

■ The critical issue in a case such as this is whether the public safety and welfare would be endangered if plaintiff was permitted to drive on the roadways. Here, after considering the facts presented and assessing the credibility of the witnesses, defendant resolved the issue adversely to plaintiff. We bear in mind that a court of review may not substitute its determination on the credibility of the witnesses or substitute its own judgment for the agency's finding unless there is a lack of substantial evidence in the record to support that finding. (*Clark v. Board of Review* (1984), 126 Ill. App. 3d 559, 467 N.E.2d 950.) That an opposite conclusion might be reasonable or that a reviewing court might have reached a different conclusion is not adequate to set aside the agency's determination. *O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 456 N.E.2d 998.

On this basis we distinguish *Breiner v. Edgar* (1985), 130 Ill. App. 3d 1010, 474 N.E.2d 1373, cited by defendant in support of his position, where the court affirmed the decision not to reinstate full driving privileges to the applicant, but permitted the issuance of a permit which would allow him to retain his full-time employment while at the same time would prevent the type of "recreational nocturnal excursions" which previously resulted in a collision which claimed two lives. (130 Ill. App. 3d 1010, 1016, 474 N.E.2d 1373.) For the reasons stated above, we find the situation in the case at bar more akin to those in *Foege* and distinguish on its facts *Koesterer v. Edgar* (1986), 143 Ill. App. 3d 832, 493 N.E.2d 702, also cited by plaintiff in support of his position, where the extent of the evidence of remediation supported reinstatement of the applicant's driving privileges.

■ Our review of the record in the instant case leads us to conclude that defendant did not act arbitrarily or capriciously in denying plaintiff's application for a permit and thus did not abuse his discretion; in addition, we find that defendant's decision was not against the manifest weight of the evidence (*Foege v. Edgar* (1982), 110 Ill. App. 3d 190, 441 N.E.2d 1267, and therefore affirm it and reverse the judgment entered by the circuit court.

Judgment reversed.

RIZZI, P.J., and McNAMARA, J., concur.