Thomas MARKOWSKI, Plaintiff,

v.

James EDGAR, et al., Defendants.

No. 88 C 902.

United States District Court,
N.D. Illinois, E.D.

Dec. 15, 1989.

Rick Allen White, Chicago, Ill., for plaintiff.

Thomas A. Ioppolo, Asst. Atty. Gen., Gen. Law Div., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Plaintiff Thomas Markowski brought this action to challenge the constitutionality of 92 Ill.Adm.Code § 100.450(b), pursuant to which the Secretary of State of Illinois does not grant a new hearing to an applicant for certain driving privileges if that applicant has an administrative review case pending concerning a previous denial of driving privileges. Pending is Magistrate Joan Lefkow's Report and Recommendation ("Report") on defendant's motion to dismiss and plaintiff's motion for partial summary judgment. The Magistrate recommended that plaintiff's motion be granted and defendant's motion be granted in part and denied in part. Both parties have submitted objections to various portions of the Report. For the reasons described below, the Court agrees with the conclusions reached by the Magistrate, although not always for the same reasons.

### II. BACKGROUND

Plaintiff has worked as a truck driver for the United Parcel Service since 1978. In May of 1984, he was convicted in California of driving while under the influence of alcohol. As a result of that conviction, the Secretary of State of Illinois ("the Secretary") revoked plaintiff's driver's license.

Under Illinois law, there are two forms of relief available to allow a person to continue driving legally once his license has been revoked. Pursuant to Ill.Rev.Stat. ch. 95½ § 6-208(b), he may apply for a new license (generally after the expiration of one year). Alternatively, pursuant to Ill. Rev.Stat. ch. 95½ § 6-206(c)(3), he may apply for a restricted driving permit ("RDP").

Upon the revocation of plaintiff's license, he filed a request for an RDP to enable him to continue working as a driver for UPS. A formal hearing was held on June 6, 1985, and the Secretary issued an order on August 5, 1985, denying the application. On August 9, 1985, plaintiff filed a complaint in the Circuit Court of Cook County (Case No. 85 CH 7981) for administrative review of the Secretary's decision, pursuant to Ill.Rev.Stat. ch. 95½ § 6-212 and ch. 110 §§ 3-101 *et seq.*

During the pendency of that case, plaintiff filed a new request for an RDP. The Secretary's deputy director informed plaintiff that, pursuant to policy, no new administrative hearing would be held on plaintiff's request while the administrative review case was pending. The deputy director confirmed this by letter to plaintiff's counsel on September 9, 1985. At that time, 92 Ill.Adm.Code § 1001.450, entitled "New Hearings," provided:

> If an applicant is denied any relief after a formal hearing conducted pursuant to the Rules of Subpart A hereof, no new hearing will be granted to that applicant until at least four (4) months have elapsed since the date of the hearing.

As described in the Report, the following events then took place:

> In a letter dated September 13, 1985, Markowski's attorney asked the Secretary to rescind the policy of denying a new hearing during the pendency of an administrative review action and threatened to bring suit to invalidate the policy. After four months had passed from Markowski's June hearing date, in a letter dated October 8, 1985, Markowski's attorney made a second request for a new hearing. By letter dated October 17, 1985, the Secretary's deputy director responded by stating that no hearing would be scheduled while the administrative review action was pending in court.

Markowski then amended his complaint in the circuit court to enjoin the Secretary from denying Markowski a new hearing during the pendency of the state court administrative review action. A hearing was scheduled for October 30, 1985 on Markowski's motion for leave to file his amended complaint. At the hearing, the Secretary agreed to grant Markowski an immediate hearing if Markowski agreed to withdraw his amended complaint. Markowski agreed and this aspect of the case was settled.

Before Markowski's new hearing before the Secretary, the Circuit Court entered an order on November 7, 1985 reversing the Secretary's order denying plaintiff an RDP. The court remanded the case to the Secretary for issuance of the RDP. Markowski had no driving privileges from March, 1985 until November, 1985, and therefore lost his job. Because of this, Markowski lost about $20,000 in wages.

As of November 22, 1985, the Secretary still had not issued to Markowski an RDP. Numerous telephone calls by Markowski's counsel to the Secretary brought no results. Therefore, Markowski filed a motion in state court for order of enforcement, or alternatively for the issuance of a rule to show cause set for hearing on November 25, 1985. At the hearing, the Secretary's counsel stated that the Secretary would issue the RDP that day and mail it from Springfield. Based on the Secretary's statement, Markowski agreed to withdraw the motion. On November 25, the Secretary entered an amended order which provided, *inter alia*, that

> A Restricted Driving Permit will be granted to [Markowski] ...
>
> This Order is not to be construed as an authorization to operate a motor vehicle. [Markowski] must meet any and all requirements of the Office of the Secretary of State and be in receipt of said Restricted Driving Permit, prior to the operation of any motor vehicle.

The Secretary did not issue an RDP to Markowski.

Upon receiving the above order, Markowski filed an emergency motion for enforcement of order set for hearing on December 3, 1985. On December 3, counsel for the parties agreed to the terms of the RDP, and the court entered this as an Agreed Order. Markowski understood that this order would cause the Secretary to enter an RDP immediately. On December 6, 1985, the Secretary issued a new amended order and mailed the RDP, which was set to expire after six months, on June 6, 1986, although the November 7 court order had not set a duration for the RDP. Markowski went back to work. On December 9, 1985, the Secretary filed a Notice of Appeal of the circuit court's order of November 7.

In March, 1986, Markowski asked the Secretary to schedule a formal hearing for reinstatement of his license. The hearing was held on April 11, 1986. The hearing officer told Markowski that his decision would be rendered in about eight weeks. Markowski asked that his RDP be extended, but the hearing officer said that if the decision was imminent at the time of the expiration of the RDP, Markowski could ask for an extension at that time. In a letter dated May 15, 1986, Markowski's counsel requested guidance as to the procedure to follow for an RDP extension. Albert Coleman, manager of formal hearings in Chicago, sent a letter to Markowski's counsel, dated May 20, 1986, stating that Markowski could proceed as follows:

> ... Meanwhile, Mr. Markowski may apply to renew his current Restricted Driving Permit (which expires April [sic] 6, 1986) at an informal conference hearing, ... He will need to have a full formal hearing for the purpose of renewing (not extending) his RDP.
>
> As I mentioned in our telephone conversation today, your client should proceed to the informal hearing as soon as possible to avoid any lapse time without driving relief.

Upon receipt of this, Markowski went to a hearing officer at the Secretary's Elston Avenue office in Chicago for an

informal conference to renew his RDP. The hearing officer told Markowski that he would recommend renewal of Markowski's RDP, and the officer agreed to try to expedite the decision by mailing out an express mail package for the return of the renewal which had to be mailed from Springfield. When, despite numerous calls to the Secretary's Chicago Office of Administrative Hearings and to Springfield, the renewal did not arrive by June 6, 1986, Markowski was again forced to leave his job. Markowski and his counsel continued to try to prompt the Secretary to render a decision on renewal of Markowski's RDP. On June 25, Markowski's counsel wrote the Secretary requesting an answer why, after 11 weeks, the decision whether to fully reinstate Markowski's driving privileges had not been issued by the hearing officer and why no decision had been made whether to renew Markowski's RDP. Counsel suggested that Markowski's requests were receiving "special treatment" because of the past and pending litigation with the Secretary. On June 27, 1986, the Secretary's Administrator of the Department of Hearings in Springfield responded regarding the requested renewal of Markowski's RDP:

> This office is in receipt of your recent informal hearing for consideration of your request for driving relief.
>
> Your request for a new restricted driving permit (RDP) is denied as your RDP issued December 6, 1985 was issued as a result of a Court Order and not as a result of an Order of the Office of the Secretary of State. The (May 20, 1986) letter from Albert Coleman of this office was in error in this matter, as he did not realize that the RDP issued on December 6, 1985 was a Court issued RDP.
>
> Any further hearings in this matter should be conducted at the formal hearing level after the administrative appeal process has been completed....

Three days later, the Administrator sent another letter, stating additional reasons why Markowski's informal hearing request for renewal of his RDP could not be granted. None of the alleged deficiencies had been cited by the hearing officer at the informal hearing at which the hearing officer recommended renewal of the RDP.

In addition to these letters from the Administrator, the Secretary's counsel responded to Markowski's June 25 letter with a letter dated June 30, 1986. Counsel stated, *inter alia,*

> I regret that it has taken so long to decide upon your client's application for reinstatement, but please be assured it was never our intention to take this amount of time.
>
> The informal hearing requesting renewal of his RDP has also resulted in a decision, which was transmitted to Mr. Markowski and you by letter dated June 27. This RDP request should have been presented to the hearing officer at the formal hearing on April 11.
>
> The Circuit Court's constant desire to return drivers to the roadway is not the sole criteria [sic] for the issuance of RDPs or reinstatement of driving privileges.

By order dated June 27, 1986, the Secretary denied Markowski's request for reinstatement of full driving privileges. Markowski received the order on July 2, 1986. On July 7, Markowski requested in writing a new formal hearing, which request the Secretary's office received on July 9. On July 16, Markowski moved in the Illinois Appellate Court for leave to proceed in the trial court for an extension of his RDP. The Secretary filed objections to the motion. The Appellate Court, on July 23, ordered the Secretary to grant Markowski an RDP extension pending disposition of the appeal. Pursuant to the Appellate Court order, on July 31, the Secretary issued to Markowski an RDP for 12 months through July 31, 1987.

During August and September, Markowski and his attorney made oral inquiries of the Secretary's office regarding the status of Markowski's July 7, 1986 request for a reinstatement hear-

ing. Markowski's attorney sent a follow-up letter on September 18 to the Secretary's counsel. In response, the Secretary's counsel sent a letter dated September 29, 1986:

> Your request on behalf of your client for a formal hearing to request reinstatement of his driving privileges is denied because Mr. Markowski is currently operating on a restricted driving permit for a period of 12 months. Also, we have already considered Mr. Markowski's request for reinstatement, which was denied on June 27. Reviewing the file, I note that your client received an RDP for 6 months in December, 1984. The Appellate Court ordered our office to extend the RDP pending disposition of the appeal. Your client, has, therefore, received two RDPs, by court order only, including an extension without the required administrative hearing. You presume that your client will be reinstated, as you state in your letter and have stated on the telephone. Our decisions are made on the evidence presented at the hearing, not by predicting the future. If your client were reinstated now, the appeal would become moot, for you would make such a motion quite rapidly, I think. Then our office would be left with no appellate review of the erroneous Circuit Court decision in this case.

> Your client's immediate problem is alleviated by the RDP, so he can drive for his employment. It is not appropriate to consider him for reinstatement while the RDP is still in effect, and before the appeal is decided.

(Report at 7–11.)

On October 29, 1986, the Illinois Appellate Court reversed the Circuit Court's November 7, 1985 decision which had remanded the case to the Secretary for the issuance of an RDP. A written opinion was issued by the Appellate Court on December 3, 1986. *Markowski v. Edgar*, 151 Ill. App.3d 176, 502 N.E.2d 1304, 104 Ill.Dec. 644 (1st Dist.1986). The court detailed the evidence of plaintiff's drinking history, the evidence of his responsible driving, and the evidence of employment hardship resulting from the denial of driving privileges. The court emphasized the Secretary's discretion over the issuance of an RDP:

> [O]nce driving privileges have been revoked, reinstatement is not automatic. Section 6–205 of the Code provides that defendant, in his discretion and upon application, may issue a permit granting limited driving privileges for work-related purposes where undue hardship would result from a failure to issue such permit. This language has been construed to be permissive rather than mandatory; accordingly, it has been held that defendant is not required to issue permit merely upon the showing of undue hardship, but must exercise his discretion based upon the public interest, and should not issue such a permit unless it has been determined that the granting of the permit would not endanger the public safety or welfare.

151 Ill.App.3d at 181, 502 N.E.2d at 1307, 104 Ill.Dec. at 647. The court concluded that the Secretary had not acted arbitrarily or capriciously in denying plaintiff's request for a permit and that his decision was not against the manifest weight of the evidence. 151 Ill.App.3d at 183, 502 N.E.2d at 1309, 104 Ill.Dec. at 649.

On October 31, 1986, two days after the Appellate Court announced its decision, the Secretary scheduled a hearing on plaintiff's request for reinstatement or, alternatively, for an RDP. The formal hearing was held on November 17, 1986. On January 29, 1987, the Secretary denied reinstatement but extended the existing RDP until July 31, 1987.

In February, 1987, plaintiff made a new request for reinstatement or, alternatively, an extension of his RDP. A formal hearing on this request was held on March 23, 1987. On May 29, 1987, the Secretary rendered a decision denying both requests. On June 30, 1987, plaintiff filed a second complaint for administrative review in the Circuit Court of Cook County (case no. 87 CH 6507).

In late June or early July, 1987, plaintiff made a new request for reinstatement or for an RDP. A formal hearing on that request was held on July 23, 1987.[1] In August, 1987, the Secretary again denied reinstatement but extended plaintiff's RDP until February 7, 1988.

Effective October 15, 1987, the administrative regulation governing new hearings was amended to read as follows:

SECTION 1001.450 NEW HEARINGS

(a) If an applicant is denied any relief after a Formal Hearing conducted pursuant to the rules of Subpart A hereof, or upon default no new formal or informal hearing will be granted to that applicant until at least four (4) months have elapsed since the date of the hearing.

(b) No new hearing will be granted to an Applicant if that Applicant has a case pending in administrative review on the same issue.

In October, 1987, plaintiff requested an extension of his RDP at an informal hearing. The hearing officer told plaintiff that he could not have an informal hearing or any relief because there was a stop placed against his license due to his pending case in Circuit Court. Later that month, plaintiff requested a formal hearing for reinstatement or, alternatively, an extension of his RDP. On October 27, 1987, the Secretary's deputy director sent plaintiff a letter which stated:

This Department is in receipt of your request to be scheduled for a formal hearing. Our records indicate that you have an administrative review action pending in the Circuit Court of Cook County (Markowski v. Edgar, 87 CH 6507) regarding a previous decision of this Office on a petition for reinstatement of driving privileges, or in the alternative, issuance of a Restricted Driving Permit.

We cannot schedule you for a formal hearing while the administrative review action is pending as jurisdiction over the matter now rests with the Circuit Court of Cook County. The administrative rules which govern our operations also preclude us from scheduling you at this time. 92 Illinois Administrative Code 1001.450(b). Should the administrative review action be resolved and you wish a hearing, please contact us and we will schedule you.

Your prior request for a formal hearing (held on July 23, 1987 while the administrative review case was pending in Court) was scheduled on directions from our General Counsel due to our receipt of your request prior to the filing of the administrative review.

Plaintiff's case in Circuit Court for review of the denial of reinstatement is apparently still pending. In this federal lawsuit, brought pursuant to 42 U.S.C. § 1983, plaintiff asserts that the Secretary's regulation and policy not affording new hearings during the pendency of an administrative review lawsuit violates the due process clause and the equal protection clause of the Fifth and Fourteenth Amendments to the United States Constitution.

### III. ABSTENTION

■ The Secretary moved to dismiss the complaint on the ground of abstention. The Magistrate's analysis of this issue is as follows:

The Secretary contends that the court should abstain from adjudicating this case based on principles first established in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 [27 L.Ed.2d 669] (1971). In *Younger*, the federal plaintiff claimed that he was being prosecuted in California for violation of a law that unconstitutionally abridged freedom of speech. *Younger* held that a federal court may not enjoin a pending state prosecution brought in good faith and in which plaintiff had an opportunity to raise his federal constitutional claim, unless an injunc-

---

1. Among the other evidence adduced at this hearing was the testimony of a witness who stated that she overheard two hearing officers discussing plaintiff's case. One officer allegedly said, "He wanted to handle my case.... I would have no problem denying him, I would just copy the old denial letter.... I discussed it with Mark [Thompson, the Secretary's deputy director] and he said no he would take care of it."

tion is necessary to prevent "great and immediate" irreparable injury. Or, as the Court stated, "the possible unconstitutionality of a statute 'on its face' does not justify an injunction against good-faith attempts to enforce it, [absent unusual circumstances]." *Id.* at 54, 91 S.Ct. at 755. The policy vindicated in *Younger* was that of equity jurisprudence "to prevent erosion of the role of the jury and avoid a duplication of legal proceedings ...", *id.* at 44, 91 S.Ct. at 750, as well as that of federalism, not to "unduly interfere with the legitimate activities of the States." *Id.*, 91 S.Ct. at 750–51. This doctrine has since been applied to civil court proceedings, *e.g.*, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200 [43 L.Ed.2d 482] (1975), and to state administrative proceedings where important state interests are involved. *E.g.*, *Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718 [91 L.Ed.2d 512] (1986). In *Dayton Christian Schools*, a religious school sought to enjoin a state human rights agency from proceeding against it. The school contended that investigation of its employment practices or imposition of sanctions would violate the religion clauses of the First Amendment. The Court held that because of *Younger* principles, an injunction could not issue where the proceedings were to vindicate important state interests and the federal plaintiff would have the opportunity to litigate its constitutional claim. The Court readily found that elimination of prohibited sex discrimination was an important state interest. 106 S.Ct. at 2723. With respect to whether the federal plaintiff had an opportunity to raise its constitutional claim in the administrative proceedings, the

Court reasoned that it probably did, but even if it did not, since the claim could certainly be raised in state court on review of the administrative proceeding, the federal plaintiff had the opportunity necessary under *Younger* to litigate its constitutional claim. *Id.* at 2724.\* \*[2]

In both *Younger* and *Dayton Christian Schools*, the law under constitutional attack (California's syndicalism statute, Ohio's human rights law) was the law being used against the federal plaintiff-state defendant in the state proceeding. That is not so in the case before this court. Markowski's state court administrative review action challenges the validity of the Secretary's decision not to reinstate his driver's license or renew his RDP. The federal court action alleges that regulation 1001.450(b), which denies Markowski of a hearing while that administrative review action is pending, deprives him of due process. His attack on regulation 1001.450(b) has no relevance to the issues pending in the administrative review action. An injunction, if granted, would not interfere with or duplicate a pending state proceeding.

This conclusion is also supported by the general rule, cited in *Employers Insurance of Wausau v. Shell Oil Co.*, 653 F.Supp. 744, 747 (N.D.Ill.1987), *appeal dismissed*, 820 F.2d 898 (7th Cir.1987), that abstention is possible only when a parallel proceeding is pending in state court, *i.e.*, one involving the same issues and parties. Markowski's state and federal court actions are not parallel because, although the parties are the same, the issues are entirely separate. Markowski's situation is not analogous to *Younger* and *Dayton Christian Schools*.

**2.** \* \* Justice Stevens, in a concurring opinion, agreed that an injunction was improper but on the grounds that the challenge to the state law was not ripe for review. He disagreed that the doctrine of abstention applied:

> *Younger* abstention has never been applied to subject a federal court to an allegedly unconstitutional stated administrative order when the constitutional challenge to that order can be asserted, if at all, only in state court judicial review of the administrative proceeding.

He pointed out that [if] the administrative agency entered a provisional coercive order, such as reinstatement pending resolution of the complainant's charge, yet refused to consider the respondent's constitutional claim, respondent would be deprived of a federal remedy (for the period from the coercive order until the action for judicial review was filed). *Dayton Christian Schools*, 106 S.Ct. at 2726 n. 5.

This case belongs with the line of cases beginning with *McNeese v. Board of Education,* 373 U.S. 668, 671–73, 83 S.Ct. 1433, 1435–36, 10 L.Ed.2d 622 (1963), holding that a plaintiff was not required to exhaust state administrative or judicial remedies in order to challenge under § 1983 state administrative procedures on constitutional grounds. *See Patsy v. Florida Board of Regents,* 457 U.S. 496, 500, 102 S.Ct. 2557, 2559–60 [73 L.Ed.2d 172] (1982), and cases cited therein. Under this doctrine, Markowski may bring in federal court a collateral attack on a state administrative procedure for violation of due process. Because exhaustion is not required, the Secretary's arguments about what Markowski might have done vis-a-vis his stated administrative remedies are without merit. Also, the state court's power to remand for taking of additional evidence, which the Secretary argues as a ground for abstention here, is merely discretionary, rather than mandatory, *see* Ill.Rev.Stat. ch. 110, ¶ 3–311(a)(7) [¶ 3–111(a)(7) ] and irrelevant in light of Markowski's right to bring his claim in federal court.

Therefore, the Secretary's motion to dismiss the complaint on grounds of abstention should be denied.

(Report at 2–5).

The Secretary's objections to this analysis rest primarily on an argument that plaintiff's constitutional claims could have been raised in the state judicial proceeding. The Court disagrees. The constitutional issue would not be a defense to any claim made by the Secretary (which is, after all, the defendant in state court), and it would not be closely related to plaintiff's cause of action in state court. The Secretary essentially believes plaintiff should be required to file a separate cause of action in state court raising the constitutional issues.

This Court sees no necessity or justification for such a requirement. The Magistrate's analysis of the abstention issue is well-reasoned, and the Court adopts it. The Secretary's motion to dismiss the complaint on grounds of abstention is denied.

## IV. QUALIFIED IMMUNITY

 The Magistrate's analysis of the immunity issue is as follows:

The Secretary contends that he is entitled to qualified immunity from damages here because there is no "clearly established" case law that would put the Secretary on notice that § 1001.450(b) is unconstitutional.* * [3] Absent waiver by the state, the Eleventh Amendment of the United States Constitution prohibits suits in federal court against citizens of another state, and by extension, against citizens of the same state. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441 [52 L.Ed. 714] (1908); *Cate v. Oldham,* 707 F.2d 1176, 1180 (11th Cir.1983). But the Eleventh Amendment does not bar a suit against a state official who acts outside the scope of his authority, or within authority that is unconstitutional. *Id.* There is a legal fiction that suits against state officials, even regarding actions they have taken in their official capacity, are not against the state, and thus not barred by the Eleventh Amendment. *Id.* at 1180–81. This immunity applies only to an official's liability for damages; it does not affect the plaintiff's right to an injunction and attorney's fees. *Pulliam v. Allen,* 466 U.S. 522, 541, 104 S.Ct. 1970, 1981 [80 L.Ed.2d 565] (1984); *Hudson v. Chicago Teacher's Union Local No. 1,* 743 F.2d 1187, 1197 (7th Cir.1984), *aff'd,* 475 U.S. 292, 106 S.Ct. 1066 [89 L.Ed.2d 232] (1986); *Cate,* 707 F.2d at 1181.

**3.** * * Markowski presents no argument on the issue, based on the erroneous assumption that immunity is an issue not amenable to summary judgment. That may have been true under the old test for qualified immunity, which had a subjective component. Under *Harlow v. Fitzgerald,* 457 U.S. 800, 815–18, 102 S.Ct. 2727, 2736–38, 73 L.Ed.2d 396 (1982), the subjective component was eliminated specifically in order to

make qualified immunity an issue that could be decided on summary judgment. *Id.* at 818, 102 S.Ct. at 2378; *Rakovich v. Wade,* 850 F.2d 1180, 1205 (7th Cir.1988) [, *cert. denied,* — U.S. —, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988) ]. The issue of qualified immunity is a legal question for the court to decide with reference to the particular facts of each case. *Id.* at 1202.

The test for whether discretionary government officials, like the Secretary, are immune from damages was set in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 [73 L.Ed.2d 396] (1982). Such officials are not liable for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2378. *See Rakovich v. Wade*, 850 F.2d 1180, 1206–07 (7th Cir.1988) (*Harlow* applies to both state and federal officials). The immunity extends to the cost of going to trial, even the cost of pretrial matters, such as discovery. The *Harlow* test was created to permit resolution of the issue of qualified immunity on summary judgment, recognizing that officials who do not violate clearly established law are entitled to immunity from a suit for damages. *Mitchell v. Forsythe* [*Forsyth*], 472 U.S. 511, 525–26, 105 S.Ct. 2806, 2815 [86 L.Ed.2d 411] (1985). " 'Before a right is clearly established, it must be specifically particularized to put the potential defendants on notice that their conduct is unlawful.' " *Wade*, 850 F.2d at 1209.

The facts in this case are not in dispute. At the time the Secretary created § 1001.450(b), and up to today, there was and is no "specifically particularized" case law clearly indicating that the Secretary's conduct amounted to a denial of due process or equal protection. There has been no authoritative decision that the Secretary's conduct is forbidden. Markowski bears the burden of establishing the existence of the alleged clearly established constitutional right. *Id.* at 1209. Since he has not met his burden (nor could he have met it), the Secretary is entitled to immunity from a lawsuit for damages. The Secretary is not immune from a suit for prospective injunctive relief, and Markowski may still ask for attorney's fees and costs, should he prevail. *Hudson*, 743 F.2d at 1197.

(Report at 14–15.)

Plaintiff objects that "[u]nder the Magistrate's rather simplistic approach, the Secretary of State would be free to adopt any rule or regulation and to enforce it, until a case was filed that declared it constitutionally unenforceable." Plaintiff adds that the "Magistrate recognized that Rule 1001.450(b) was implemented for the explicit purpose of chilling applicants' statutory right to judicial review of his adverse decisions ... [and] was adopted as a blatant deterrent to the exercise of the statutory rights of applicants, and thus expressly actionable under the *Harlow* test." The Court believes it is not the Report, but rather plaintiff's reading of the Report, which is simplistic. A closer reading of the Report would reveal that the Magistrate has considered plaintiff's concerns.

Plaintiff also argues that *Harlow* should be extended to include a subjective component. In the face of clear case law to the contrary from superior courts, this Court is in no position to consider such an argument. *See also Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Smart v. Simonson*, 867 F.2d 429, 430–431 (7th Cir.1989).

The Court agrees with and adopts the Magistrate's analysis on the issue of qualified immunity.

## V. DUE PROCESS

■ Plaintiff argued before the Magistrate that he had property interests in his right to an administrative hearing and in his right to judicial review of adverse administrative decisions,[4] and that Rule 1001.-450(b) deprives him of those rights without due process of law.

The Magistrate found that plaintiff has a protectible property interest in his right to judicial review, citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), and *Lemon v. Tucker*, 625 F.Supp. 1110 (N.D.Ill.1985), but that plaintiff has not been deprived of that interest. Plaintiff has not objected to this conclusion, which the Court adopts.

---

**4.** Plaintiff does not dispute that he has no property interest in a revoked driver's license or in an RDP. *See Doe v. Edgar*, 721 F.2d 619, 624 (7th Cir.1983).

The Magistrate found that plaintiff does not have a protectible right to a hearing because such a hearing is not required by state law upon application for reinstatement or for an extension of an RDP. Plaintiff objects that the Magistrate misread the state law on this issue. Plaintiff points out that Ill.Rev.Stat. ch. 95½ § 2–118 provides for a hearing "[u]pon the suspension, revocation or *denial* of the issuance of a *license, permit,* registration or certificate of title." (Emphasis added.) Pursuant to § 6–208(b), an application for a reinstated license is to be treated procedurally the same as an application for any other "license pursuant to Section 6–106," to which § 2–118 clearly applies. Similarly, § 2–118's extension to "permits" must include RDP's in the absence of any contrary indication in the statutes.

Plaintiff's argument appears to be well-taken, but it is ultimately unavailing. The Secretary points out that even if state law affords a right to a hearing, such a right is not a constitutionally protected property interest. As the Supreme Court has stated: "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). Thus, "if state law establishes procedural entitlements, these are not themselves property and will not be enforced in the name of the Constitution." *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). A similar analysis was employed in *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073 (7th Cir. 1987), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988):

> Szabo–Digby tries to get around its lack of a property interest ... by·insisting that it did not get *all* the process to which it is entitled under state law. Now one would think that a claim of unauthorized departure from procedure established by state law is exactly what the state courts are for. Szabo–Digby insists, however, that it has a property interest in the observance of the proce-

dures themselves.... This is the argument that induced us to impose sanctions on our own initiative in *Weinstein, [v. University of Illinois],* 811 F.2d [1091] at 1097–98 [ (7th Cir.1987) ].

823 F.2d at 1081. Furthermore, bootstrapping state-created procedures into a constitutional interest where there is no constitutionally protected property interest in the underlying substantive relief sought would run afoul of the principle of *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), that a federal court is barred by the Eleventh Amendment from instructing state officials to conform their conduct to state law. The Court finds that plaintiff does not have a protectible property interest in his right to an administrative hearing, and his due process claim must therefore fail.

## VI. EQUAL PROTECTION

Plaintiff alleges that Rule 1001.-450(b) violates the equal protection clause by arbitrarily discriminating against those who seek administrative review of a previous decision by the Secretary denying reinstatement or an RDP. The Magistrate agreed with plaintiff, finding no legitimate basis for the distinction:

> Markowski alleges that § 1001.450(b) arbitrarily discriminates against those who seek administrative review of the Secretary's decision to deny them reinstatement or an RDP. Markowski also argues that the regulation fails the rational relationship test because it serves no legitimate governmental interest and penalizes persons seeking administrative review. The Secretary contends that his procedure is not unfair or punitive, and that a contrary procedure would cause conflicting decisions, confusion or duplicative effort. The Secretary sums up the rationale behind the regulation as "one case at a time on the same issue."

As the Secretary points out, and Markowski does not dispute, drunk drivers do not constitute a suspect class. *See Doe v. Edgar,* 721 F.2d [619] at 622 [ (7th Cir.1983) ]. Section 1001.450(b) creates no explicit classification. Nevertheless,

the effect of § 1001.450(b) is to divide those who apply for reinstatement and/or an RDP into two discrete groups that are treated by the Secretary's office very differently: those who never challenge the Secretary's decisions in court are allowed to continue having periodic hearings before the Secretary; those who file an action for administrative review, as is their right under the Illinois Administrative Review Act, ch. 100 [110], Ill.Rev.Stat. ¶ 3–101, *et seq.*, are not allowed to have either a formal hearing for reinstatement or an informal hearing for an RDP during the pendency of their administrative review action.

Having found that § 1001.450(b) creates two categories of persons seeking driving privileges, the next issue is whether the classification created is consistent with the Fourteenth Amendment, that is, whether the classification created by the regulation "rationally advances a reasonable and identifiable governmental objective...." *Schweiker v. Wilson,* 450 U.S. 221, 235, 101 S.Ct. 1074, 1083 [67 L.Ed.2d 186] (1981). *See Doe v. Edgar,* 721 F.2d at 622 (Secretary of State's classification subject to rational basis scrutiny).

The Secretary states that § 1001.450(b) advances the State's interest, first, in dealing with one case at a time on the same issue. Otherwise, the Secretary argues, there would be duplication of effort and administrative confusion. Second, the Secretary argues, a driver might be able to get through a new hearing what he hasn't been able to get from the prior one under court review. Finally, as reflected in Plaintiff's Exhibit 26, the Secretary fears that were he to allow Markowski a new hearing, a pending court action might be mooted. As the Secretary's counsel wrote to Markowski's counsel:

> If your client were reinstated now, the appeal would become moot.... Then our office would be left with no appellate review of the erroneous Circuit Court decision in this case.

Plaintiff's Exhibit 26. All of the reasons lack legitimacy. Concerning the first

reason, administrative convenience is not, alone, sufficient reason for the Secretary to adopt a rule which completely eliminates the individual's otherwise unfettered ability to seek a new hearing every four months. *See Lemon,* 625 F.Supp. at 1114 (state agency may not streamline procedures so as to deprive complainant of opportunity to present reasons why agency should not dismiss his claim). The regulation permitting a hearing every four months indicates a presumption that a new set of facts may develop in that period of time. If this is so, one case at a time or duplication of effort is no rational basis to exclude from the four month rule only those who have challenged the Secretary's decision on a prior hearing on different facts. Administrative confusion is a term that lacks any meaning in this context. Surely the Secretary would not be confused if he granted a hearing to persons in plaintiff's position; certainly plaintiff and those like him would not be confused.

Nor is allowing a driver to get through a new hearing what he hasn't been able to get from a prior one a legitimate basis for the exclusion. Again, given the Secretary's established procedures, there can be a new set of facts and therefore a new case every four months. The system *assumes* that one might prevail the next time after having been denied. If this were not so, the new hearing in four months rule would be a sham, merely providing employment for hearing officers to perform a charade. The Secretary may determine the frequency with which new petitions will be heard. But to exclude those who have challenged the Secretary in court from the right to repetition is not related to a legitimate end of government.

Finally, that some administrative review actions would be mooted is not a bona fide consideration, either. Given the established administrative machinery for review of a driver's case every four months, the Secretary's main concern should be the proper result *at that time. Kaufmann v. Edgar,* slip op. at p. 10,

No. 88 CH 6698 (Circuit Court of Illinois, March 23, 1989). The chance might be lost to put a case "on the books," but that, in itself, is not a proper purpose. Similar conduct was rebuffed in *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 876 (7th Cir.1987), where the court of appeals reversed a district judge who entertained a motion for summary judgment interposed solely for the purpose of obtaining a ruling from the court on liability when the case had been otherwise settled. The Secretary's desire to litigate every administrative review action to conclusion is not a legitimate or reasonable state interest.

Instead of advancing a legitimate or reasonable state interest, the Secretary's regulation does just the opposite by punishing those who seek administrative review of an adverse decision. The Illinois legislature created in the Administrative Review Act a right to judicial review of the Secretary's decisions. The right to seek judicial review serves as a check on the otherwise broad discretion reposed in the Secretary.* * [5] Section 1001.450(b) chills that right by taking away a driver's ability to have new periodic hearings once he files an action for administrative review. The result for Markowski, and probably many other drivers, is to deprive him of his employment, a result which would tend to discourage people from filing for administrative review. Once a state establishes avenues of review, "it is now fundamental that ... these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *Rinaldi v. Yeager*, 384 U.S. 305, 310, 86 S.Ct. 1497, 1500 [16 L.Ed.2d 577] (1966).

The disparate treatment that the Secretary gives the two classes of persons here is arbitrary. Other than the fact that one class has filed for judicial review of an unfavorable decision by the Secretary, the two groups are similarly situated. A state may not draw a line between otherwise identical groups without a legitimate purpose. *Rinaldi*, 384 U.S. at 308–09, 86 S.Ct. at 1499–1500. (Report at 17–20.) [6]

The Secretary's first objection is that the Magistrate's analysis is inconsistent with cases which permit the imposition of burdens on access to the court system. *See Bankers Life & Casualty v. Crenshaw*, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988) (upholding fifteen percent penalty on unsuccessful appeals from money judgments); *Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) (upholding twenty-five dollar appellate filing fee as applied to indigents seeking review of adverse welfare decisions); *Bowman v. Niagara Machine and Tool Works Inc.*, 832 F.2d 1052 (7th Cir.1987) (upholding statute of limitations against equal protection challenge). These cases are simply inapposite; the issue in this case is not a general limitation on access to courts, but a distinction between persons who are granted a hearing and persons who are not.

The Secretary's second objection is that the rule furthers a legitimate state interest in avoiding simultaneous and duplicitous litigation. The Court agrees with the Magistrate that the rule does not further that purpose. Presumably, if a second hearing results in a denial for the same reasons as did a prior hearing which is pending in administrative review in court, a complaint challenging the second denial could be consolidated with the first case. If the issues in the second hearing are different, then a new administrative lawsuit would not be duplicitous of the first one. Indeed, the second lawsuit may conceivably moot the

---

5. * * Ch. 95½ Ill.Rev.Stat. ¶ 6–211(a) provides: "The Secretary of State shall administer the provisions of this Chapter and may make and enforce rules and regulations relating to its administration." Paragraph 6–212 of the same chapter provides: "The provisions of the Administrative Review Law ... shall apply to and govern all proceedings for the judicial review of final administrative decisions of the Secretary of State hereunder."

6. The Magistrate also discussed at length possible "illegitimate" motives for the distinction. The Court is not convinced of the accuracy or relevance of that discussion, nor in agreement with its tone, and does not adopt that portion of the Report.

**1140**

first one. The statute thus does not serve the Secretary's stated purpose; rather, it merely imposes an unjustified burden on applicants who seek to avail themselves of judicial review.

The Secretary also objects that the rule allowing a new hearing every four months is very liberal, and that hearings could be limited to once every six months or once every two years. The Secretary argues that there is no reason he could not even extinguish all driving privileges for ten years after a DUI conviction, with no provision for reinstatement or for an RDP. The implication of this argument is that where a state need not provide a benefit at all, but chooses to provide the benefit, it may provide the benefit on an arbitrary basis. The Secretary offers no authority for this argument, which the Court rejects.

The Court finds the Secretary's objections to be without merit, and adopts that portion of the Magistrate's analysis quoted above (*see supra* at 1137–39). The Court does not adopt the portion of the analysis which is not quoted (*see supra* at n. 6).

## VII. CONCLUSION

The Secretary's motion to dismiss is denied with respect to injunctive relief and granted with respect to damages. Plaintiff's motion for partial summary judgment is granted. The Court hereby declares that 92 Ill.Adm.Code § 1001.450(b) violates the equal protection clause of the Fourteenth Amendment of the United States Constitution.